KINCAID v. PRICE.

Opinion delivered February 18, 1907.

1.  SALE OF LAND—RESCISSION—MISREPRESENTATION AS TO VALUE.—A representation by a seller that the land which he was selling was worth a certain sum per acre is nothing more than an expression of opinion upon which the buyer relies at his own risk. (Page 23.)

2.  SAME—MISREPRESENTATION AS TO MATTER OF GENERAL KNOWLEDGE.— The market price of hay is a matter of such general information that a misrepresentation with reference thereto is not calculated to mislead a farmer in buying land. (Page 23.)

3.  SAME—MATERIALITY OF MISREPRESENTATION.—Where a buyer of land informed the seller that he desired to purchase land suitable for growing hay, and needed only a small amount of timber land, a misrepresentation as to the amount of timber land would be material. (Page 23.)

4.  SAME—RESCISSION—PRACTICE.—To justify a court of equity in rescinding a written contract for the conveyance of land upon the ground of misrepresentation, a clear case should be made out by the evidence; and if it appears that the plaintiff has an adequate remedy at law, he should be left to his legal remedies. (Page 24.)

5.  WITNESS—IMPEACHMENT ON CROSS EXAMINATION.—While a witness on cross examination may be questioned touching his past and present mode of life having any bearing on his character and the weight to be attached to his testimony, he can not be asked whether he had been indicted for larceny. (Page 24.)

6.  SALE OF LAND—MISREPRESENTATION—OPPORTUNITY OF INSPECTION.—The fact that a buyer of land, before purchasing, made a partial inspection of the land will not preclude him from rescinding on account of the seller's misrepresentations as to the quantity of timber land in the tract if the inspection was insufficient to prevent him from being misled by such misrepresentations. (Page 25.)

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*John L. Ingram* and *John F. Park,* for appellants.

1.   Where a vendee has been induced to purchase a section of land relying upon the representations of the vendor and his agent that there was not over forty acres of the land in timber and that six hundred acres of it was prarie land susceptible of being mowed for hay, and it develops afterwards that these representations were untrue, and that there was 144 acres of the land in timber, and not over 350 acres of "mow" land, the vendee is entitled to a rescission of the contract of purchase and to judgment for the part payment already made.   30 Ark. 687; 32 Ark. 326; 47 Ark. 339; 22 N. E. 744; 9 S. W. 867; 13 S. W. 755; 37 N. W. 497; 30 Ark. 540.

2.   The burden was on appellee to show that appellants did not rely upon the representations made to them by appellee and his agent.   Ewart on Estoppel by Misrepresentation, 145.

*Pettit & Pettit,* for appellee.

1.   Rescission must fail.   There is no tender of possession, or of reconveyance or release.   17 Ark. 607; *Id. 229.*

2.   It is an executed contract, consummated by delivery of deed and surrender of possession.   There is no allegation of inadequate remedy at law.   18 Enc. of Pl. & Pr. 806.

3.   To justify a rescission of the contract on the allegation of fraud, the proof must be clear and satisfactory.   20 Cyc. 120; 39 S. W. 881; 23 Ark. 176; 11 Ark. 378.

4.   Having personally inspected the land, and having had opportunity to inform themselves as to the amount of timber land in the tract, appellants had no right to rely upon representations of appellee in this respect.   30 Ark. 187; *Id.* 691; 26 Ark. 31; 27 Ark. 245; 16 Ark. 118; 19 Ark. 522; 46 Ark. 337; 11 Ark. 66; 30 Ia. 298; 1 Ark. 41; 6 Ark. 513; 45 N. E. 580.

5.   To avoid a contract, the misrepresentation must be knowingly and fraudulently made concerning some material fact.   An honest opinion, though erroneous, affords no ground for rescission. 125 U. S. 247; 19 Ark. 522; 31 Ark. 170; 46 Ark. 337.

6.   Fraud and material injury must concur, and the injury must be of such character that a recovery of damages will not afford relief, before equity will intervene to grant relief.   27 Ark. 50; 46 Ark. 337; 12 Ark. 296; 26 Ark. 30; 43 Ark. 462, and

other authorities, *supra.* Speculative damages will not be awarded. *Supra.*

*John L. Ingram* and *John F. Park,* for appellant in reply.

In this case, the vendor having a better opportunity than the vendees to know the facts regarding the land, if he innocently misrepresented them, and the vendees, relying on his representations, were induced to buy, the latter may, if other circumstances justify it, rescind the contract, though the vendor was not guilty of positive fraud. 9 S. W. 867. The seller is bound to know that the representations he makes to induce the sale are true. 73 N. W. 560; 1 Page on Contracts, § 153. See, also, 71 Ark. 98.

RIDDICK, J. This is a suit in equity to rescind a contract for the sale of a section of land in Prairie County, Arkansas. W. M. Price, Jr., of Stuttgart, Arkansas, sold this land to John A. and Ella S. Kincaid of Springfield, Illinois, for the sum of thirty-five dollars per acre, amounting in all to $22,400. Kincaid and his wife, Ella S. Kincaid, thereupon executed two notes for the purchase price, one for $2,400 to be paid in sixty days, the other for $20,000 to be paid in six months. Price executed a deed for the land. The sixty-day note was delivered to Price, and the other note and deed was deposited with the German-American Bank at Stuttgart under a written agreement and instructions from the parties to deliver the deed to the vendees upon the payment of the notes, but if the notes were not paid at maturity to deliver the note to Price and hold the deed until the notes were paid in full.

The first note was transferred by Price, and was paid at maturity, but the vendees failed to pay the second note, and in July following brought this action to rescind the contract on the ground that they were induced to purchase the land by false and fraudulent representations of the defendant, Price, to the effect that there were only fifty acres of timber on the land, the remainder being prairie; that the market price of hay had never been less than $6.50 per ton; that the railroad grade and bed running through the land had been constructed but a short time, and that the ties and steel would be laid shortly, that the land belonged to Price, and that its market value was $35 per acre.

Plaintiffs state that they relied upon all of these statements, but that they proved to be untrue.

The defendant filed an answer, denying that he had been guilty of any misrepresentations and alleging that he had faithfully performed his contract and had delivered to the bank a deed conveying the land as required by his contract to be delivered upon the payment of the notes. In conclusion, he asked that the complaint be dismissed for want of equity, and that he have judgment for the amount of the unpaid note. On the hearing the chancellor found in favor of the defendant, rendered a decree accordingly, and the plaintiff appealed.

1. It is not shown that the land did not belong to Price, or that his representation that it was worth $35 per acre was anything more than the usual puffing that the law permits the seller to indulge in, for the question of the market value of land is such an uncertain one that this statement must be regarded as nothing more than a mere expression of opinion, upon which the buyer relied at his own risk. *Jennings* v. *Broughton*, 17 Beav. 234; 2 Pomeroy, Equity, § 891.

2. The charge that the defendant falsely represented that a railroad would shortly be constructed across the tract can not be sustained, for the contract read in evidence shows that the defendant sold the right of way of this contemplated railroad, but expressly stipulated that if he should not be able to give a good title thereto the vendees should be allowed a rebate of $35 per acre for the land taken up by the right of way. It does not seem reasonable to believe that this stipulation would have been made about a right of way of a railway that was to be soon constructed. On the contrary, it indicates that there was an understanding that this right of way had been abandoned by the railway company and that the defendants claimed to be the owners thereof.

3. The market price of hay is a matter of such general information that the statement alleged to have been made in reference thereto was not such a representation as was calculated to mislead the vendees, one of whom was a farmer.

This brings us to the allegation that the defendant represented that there were only fifty acres of timber on the land, and that plaintiffs relied on this representation, but that a subsequent survey showed that there were over a hundred and forty

acres of timber. Plaintiff testified that he informed the defendant that he desired to purchase land suitable for growing hay and for mowing, and needed only a small amount of timber land. A representation in respect to the amount of timber would therefor be material.

But to justify a court of equity in rescinding and cancelling a written contract for the conveyance of land on the ground of misrepresentation a clear case should be made out by the evidence. Where the parties have deliberately entered into a written contract for the sale of property, it ought not to be set aside by a court unless there be clear and satisfactory evidence to show that there was a misrepresentation by the defendant as to a material fact, that plaintiff relied upon it, and was induced thereby to make the contract. And if it appears that the plaintiff has an adequate remedy at law, he should be left to his legal remedies. Now, in this case the evidence was conflicting. On one side was the testimony of one of the plaintiffs and the deputy surveyor, testifying that there were about 140 acres in wood land; on the other was the defendant and one of the parties who assisted in making the survey. The deputy surveyor declined on cross-examination to answer fully as to the different lines run by him in making the survey, while his assistant who was introduced by the defendant testified that the surveyor did not make a complete survey, that the amount of the woodland was arrived at not by an actual survey of the whole area of woodland, but by measuring a part and estimating the remainder. This witness gave it as his opinion that there were only from 50 to 70 acres of woodland. It is true that on cross-examination he admitted that he had been indicted for stealing an overcoat. But good men are sometimes indicted. A witness should be impeached by contradicting his testimony or by showing that he has made statements different from his testimony or by evidence of his general reputation. Kirby's Digest, § 3138. It is true that on cross-examination a witness may be examined touching his past and present mode of life having any bearing on his character and the weight to be attached to his testimony, but the mere fact that a man has been indicted for a crime is not of itself sufficient ground to reject his testimony. Taking this into consideration, we are not able to say that the evidence of misrepresentation is strong

enough to overturn the finding of the chancellor to the contrary.

The evidence shows that the plaintiffs examined this land before they purchased by driving along two sides of the section. While this of itself does not necessarily show that they did not rely on the representations of the defendant as to the quantity of timber, it is a circumstance to be considered in arriving at a conclusion as to whether they did in fact rely on such statements or were misled by them. Though the plaintiffs partially inspected the land by driving along the east and north sides of the section, yet, as the timbered portion of the tract was on the south part of the section and nearer the west than the east side, this partial inspection was not sufficient to give them any very exact idea of the area of the timbered land. They could see, of course, that a large part of the section was prairie land, but whether there were fifty or a hundred acres of timbered land they could not tell with any degree of exactness. If therefore the evidence clearly showed a misrepresentation by defendant that induced plaintiffs to purchase, the mere fact that plaintiffs made this inspection would not justify the courts in refusing relief. *Neely* v. *Rembert,* 71 Ark. 91.

But we need not go into a discussion of the law on that point, for, as before stated, after a careful consideration of the evidence, we feel that it is doubtful on which side the preponderance of the evidence lies in this case, and we are of the opinion that the fact of fraud and misrepresentation is not shown with sufficient clearness to justify the courts in cancelling a written contract.

The judgment must therefore be affirmed.