THACKER *v.* HICKS.

4-8601                                                      212 S. W. 2d 713

Opinion delivered July 5, 1948.

*W. Leon Smith*, for appellant.

*Cecil Grooms*, for appellee.

HOLT, J.    Appellant, L. F. Thacker, began this suit September 9, 1946.   He alleged in his complaint that he was "the owner of a leasehold interest" in a tract of land in Greene county, here involved, and entitled to its possession.   He further alleged that appellees, Steve Hicks and his wife, had wrongfully, forcibly and by threats, moved on said land, had taken possession and control and refused to vacate.   He prayed for possession and for alleged damages.

February 8, 1947, appellant, Kitchen, intervened, alleging "that the (lease) term of said Thacker has expired and he has surrendered said land to intervener; that intervener is the owner of a leasehold interest in said land by virtue of a lease dated October 15, 1943, executed by Lester Kent, the owner of said lands, for a term commencing on the 1st day of January, 1947, and ending on the 31st day of December, 1949, and by virtue thereof

the intervener has succeeded to the rights of the said Thacker.''

October 6, 1947, Kitchen filed an ''Intervention and Amendment to Complaint'' in two counts. In the first, he made, in effect, the same allegations, as in his first intervention, *supra,* and that appellees held possession wrongfully, forcibly and without right. In his second count, he alleged, in effect, that after appellees had wrongfully and forcibly taken possession of said land; appellant, Thacker, ''entered into an agreement with the defendants (appellees) whereby the said L. F. Thacker then being in possession of said property agreed with the defendants that they might occupy the small house in question and farm ten acres of the land adjacent thereto for the year 1946, the defendants to farm ten acres of land on a sharecrop basis; . . . that . . . defendants failed and refused to comply with said contract and failed and refused to farm said lands according to the terms of said agreement, and that they, therefore, forfeited their right to longer occupy said premises and that said contract expired on December 31, 1946, and had expired at the time the intervener herein gave written notice to the defendants to vacate said premises, and surrender the possession thereof; that the intervener is entitled to the possession of said property and as the successor in interest in the leasehold of said land, is entitled to maintain this action against the defendant; and that the defendants have paid no rents on said lands, but continued to forcibly and unlawfully retain possession thereof.''

Appellees answered with a general denial and asserted ownership of the land and the right to its possession. They also denied that they had entered into any lease contract with appellants, or any one else, and in effect, by way of cross complaint prayed for actual damages in the amount of $500 on account of the wrongful acts of appellant and punitive damages in the amount of $2,000.

A jury trial· resulted in a verdict for appellees for restitution of the property claimed by them and damages in the amount of $250. From the judgment is this appeal.

For reversal, appellants contend (1) that the trial court erred in permitting improper cross-examination of appellant, Thacker; (2) in giving an alleged improper instruction; (3) in refusing to give a certain instruction requested by appellants, and (4) that the evidence was insufficient to support the verdict.

We have concluded that appellants' first contention, that the court permitted improper testimony to go to the jury, must be sustained.

There was testimony to the effect that appellees moved on the land in question in 1931, claimed ownership, made substantial improvements and occupied it adversely until about December 3, 1941. This land lies along the St. Francis River and is commonly known as "swamp land." The evidence further shows that in July, 1940, B. C. Hudson attempted to convey this land to Lester Kent. Just what interest Hudson had in the land, the record does not show. December 3, 1941, appropriate proceedings were had, resulting in both appellees being declared insane, and they were duly committed to the State Hospital for a period of about four months, when they were released. While appellees were in the hospital, Kent leased the land to appellant, Kitchen. Kitchen subleased to Sprague and Company, and the company leased it to Thacker. After the expiration of Thacker's alleged lease, Kitchen took possession under a purported lease from Kent. In late 1945 or the early part of 1946, appellees, finding the property vacant, moved back on the land and into the same house they left when they were removed to the State Hospital, and remained on the property until evicted by a court order February, 1947. Appellant says that appellant, "W. T. Kitchen . . . is now the real party in interest in this case." Kitchen, as above noted, claims to have leased the land in question from Lester Kent.

The record reflects that appellants, in support of their allegations in count two of their amended complaint

and intervention, *supra*, in which they alleged that appellees occupied the land under a contract with Thacker, introduced Thacker as a witness to support this contention. Appellees positively denied that they ever entered into such contract. In this connection, appellant says: "At any rate, the witness, Thacker, was the only person introduced by the appellant to establish the existence of that contract. Therefore, it became a question as to whom the jury believed with reference to the making of that contract, the witness Thacker or the appellee, Tommie Hicks."

During the cross-examination of witness, Thacker, the record reflects the following: "Q. You never were tried for a violation of the election laws of Craighead County? A. Oh! Q. Sure 'Oh!' You were in on that? A. Yes. *Mr. Smith*: That question is objected to. *Mr. Grooms*: He has already answered it. *Mr. Smith*: I move that it be stricken from the record. *The Court*: Mr. Combs, read the question and answer. (Question and answer read by reporter.) *The Court*: Objection overruled. *Mr. Smith*: Exceptions."

The admission of this testimony was prejudicial to appellants and was error.

We have many times held that it is improper, on cross-examination, to ask a witness if he had been indicted or accused of a crime. It would be proper to inquire if he had been declared guilty or convicted of a crime. This court in *Kennedy* v. *Quinn*, 166 Ark. 509, 266 S. W. 462, said: "We have frequently and recently decided that a witness cannot be interrogated on his cross-examination for purpose of impeachment concerning indictments or mere accusations of crime. He may be asked if he was guilty or was convicted, but he cannot be asked if he was indicted or accused."

In the early case of *Bates* v. *State*, 60 Ark. 450, 30 S. W. 890, the trial court, over objections, permitted a witness on cross-examination to be asked if he had not been indicted three times for stealing hogs. The witness answered: "Yes, but I was acquitted each time, and one time the judge ordered the case *nol prossed*." This

court, in reversing that case, said: ''The fact that the appellant answered that he had been acquitted each time he had been indicted before did not, in our judgment, necessarily have the effect to remove all prejudice that may have been caused by the question and answer. The question was improper, and whether it may have prejudiced the jury we have no certain means of determining. It was calculated to do so, especially as the court instructed them to consider it.''

And, in *Kincaid* v. *Price*, 82 Ark. 20, 100 S. W. 76, this court said: ''It is true that on cross-examination a witness may be examined touching his past and present mode of life having any bearing on his character and the weight to be attached to his testimony, but the mere fact that a man has been indicted for a crime is not of itself sufficient ground to reject his testimony.''

We do not discuss the other alleged errors, but in view of a new trial, we point out that on the record presented, we think there was substantial evidence warranting the jury's verdict and there was no error in any instructions given or refused by the court. But for the error indicated, the case would be affirmed. Accordingly, the judgment is reversed and the cause remanded for a new trial.