Dooley *v.* Sterling Stores, Inc., et al.

4-8734                                          218 S. W. 2d 696

Opinion delivered March 21, 1949.

896

*Hebert & Dobbs* and *Lloyd Darnell,* for appellant.

*McMath, Whittington, Leatherman & Schoenfeld,* for appellee.

GRIFFIN SMITH, Chief Justice. Thomas Dooley, age eleven, and his father, John, asked for $22,000 to compensate damages resulting from false imprisonment and assault and battery, the allegation being that Thomas was wrongfully accused of stealing, then detained and beaten, and finally kicked into a street with an admonition to stay away from the premises. Relationship of the parties is shown in the margin.[1]

Thomas Dooley's testimony was that in February, 1947, he went to a Kress store to buy valentines with money his father had given him. None displayed by Kress was suitable, so he went to Sterling's, where a purchase was made. While examining a fountain pen, with the idea of ascertaining the price and perhaps returning the following day to buy it, Thomas was accosted by Perry Scott and accused of stealing. He was taken to a room in the rear of the store building where Scott, with Lucius A. Ripley, and Virgil Garrett, conducted an interrogation. Prior to the questioning, however, Thomas was pushed into a hole under the elevator. The opening was then closed with boards and the elevator

---

[1] One of the defendants, an appellee here, is Sterling Stores, Inc. Lucius A. Ripley was Sterling's manager at Hot Springs. Perry Scott, 19 years of age, was a Sterling employe, acting under direction of Ripley. Virgil Garrett also assisted Ripley. John Dooley, Negro, was the father of eight children, of whom six were boys. Ripley was made a defendant in the primary action against the corporation, which embraced a charge of false imprisonment.

lowered. When taken from this point of imprisonment Thomas was put on a table, falsely accused, "juped" and struck with a baseball bat, then escorted to the front door and severely kicked. One of his tormentors said, "We have gone this far, we should kill him."

There was medical testimony from which the jury could have found that injuries had been sustained in some manner, or the inference could have been that other causes accounted for an illness that is alleged to have followed.

Ripley testified that Scott brought the young Negro to the company's office and told him the boy was caught in the act of stealing a fountain pen. Certain articles were taken from the accused's pockets, including the pen, valued at $1. When Thomas was told that his parents were to be informed of what had occurred he appeared to be "considerably scared," then admitted the pen had been stolen. Thomas also said he had "stolen a little at the Kress store." All of the witnesses who testified regarding the detention and interrogation asserted that neither force nor threat was used. There was explicit denial that Thomas was placed under the elevator. In fact, the structural arrangement was such that a person could not get under it unless the floor should be "taken up," and this was not done.

From a factual standpoint the jury could have believed Thomas and his supporting witnesses, or it could have accepted the explanations made by Scott, Ripley, and Garrett. It did the latter by finding for the defendants.

It is urged, however, that the jury was erroneously instructed, and that questions asked by counsel for the defendants was prejudicial because inflammatory.

Three questions (alleged to have been incompetent) are emphasized: (1) "Did you take anything when you were in Kresses?" (2) "How about the other times you were in Kresses?" (3) "You didn't take anything in Kresses?".

898

Appellants rely upon the rule that a witness who is being cross examined should not be asked if he has been indicted, or accused of a crime. *Thacker et al.* v. *Hicks,* 213 Ark. 822, 212 S. W. 2d 713; *Kincaid* v. *Price,* 82 Ark. 20, 100 S. W. 76.

Counsel for appellees, in asking the questions now complained of, said it was intended to test·the boy's credibility, the statement having been volunteered that, prior to the time mentioned, Thomas had never been to town and only knew where the Kress store was because he could read the signs.

"Peewee" Roberts, of the Hot Springs police force, testified that in September, 1946, he was called to Lowery's Food Palace concerning Thomas Dooley. Over objections the witness was permitted to answer that when he reached the store he saw "this little boy"— the reference obviously being to Thomas Dooley. Inference to be drawn from Roberts' testimony is that Thomas was suspected of stealing pecans, and the officer was called to frighten him. The lad was taken to police headquarters and later turned over to John Dooley, the father. When, on cross-examination, Roberts' attention was directed to Thomas Dooley, and to a brother who was in the court room, there was partial failure of identification; but the witness thought he remembered that Thomas' name was on the headquarters report.

A single instruction—appellees' No. 1—is abstracted, although ten or more were given. We would have to examine the record to ascertain what the Court told the jury regarding Roberts' testimony.

Counsel, in explaining objections, insisted that the witness could only be interrogated concerning criminal convictions, as distinguished from an indictment, information, or mere accusation. But the rule is somewhat broader. Admissions by a witness that he has actually stolen, and that the act was committed at a time reasonably current, would be just as damaging to the person's character as would proof of conviction, and to that extent it would go to credibility.

In trial discussions and comments to the Court in the jury's presence, it was repeatedly said that the information sought from Roberts related to credibility alone. As the question was framed, Roberts was asked whether he had personal information respecting ". . . an incident concerning Thomas Dooley in September of 1946.'' The witness gave an affirmative reply, adding that when he went to the Food Palace ''this little boy had some pecans in his pocket.'' No attempt was made to prove that the pecans were stolen, nor was there further objection until Roberts had completed his narrative. The Court then overruled a plaintiff motion that the jury be told to disregard the testimony as being immaterial, irrelevant, and ''highly improper.''

If appellants had not undertaken to prove that Thomas had never gone to town except in the company of one of his parents or a responsible person, the Court might well have sustained the motion to have testimony expunged. In view of affirmative declarations by Thomas and his mother which must have been intended to impress the jury with the boy's lack of familiarity with the Kress Store, Food Palace, and such places, we cannot say that Roberts' statements did not tend to contradict the two or more witnesses who placed Thomas close to his mother, home, and school. Certainly the testimony had but little value; yet, slight as that value may have been, a fact susceptible of possible contradiction was offered by plaintiffs, and they cannot justly complain when it was met with equally trivial testimony;[2] hence the result, even if erroneous, was harmless error.

Final objection is that defendants' Instruction No. 1 was prejudicial because, in effect, it told the jury that if young Dooley was observed in the commission of a felony, or if those charged with having mistreated him had probable cause to believe he was committing a felony, they were justified in detaining him a sufficient length

---

[2] For an interesting discussion of testimony for impeachment purposes and the limitation upon cross-examination of a witness regarding specific acts, reputation, etc., see the opinion of Mr. Justice JACKSON in *Michelson* v. *United States*, 335 U. S. 213, 695 Ct. 213.

of time to regain the property, if in doing so good faith was exercised.

The primary objection is (a) that there was no evidence to warrant the Court in mentioning a felony, and (b) the direction is in conflict with other instructions.

Instruction No. 1 deals only with that part of the litigation relating to false imprisonment.[3]

The Act defining larceny does not employ the terms "grand" and "petit"; nor does it say that one offense is a felony and the other a misdemeanor. To get the distinction we turn to the statutory classification.

In the case at bar the Court was not asked to define words used in the instruction; and we cannot, without exploring the record, say the language was not explained by an appropriate instruction.

Thomas Dooley was not a defendant seeking to avoid criminal responsibility. On the contrary, he was the moving force in an attempt to prove, through civil action, that the corporation and Ripley were guilty of acts denounced as unlawful. It is true, as the instruction said, that the defendants had the right to detain Thomas if the justifying circumstances mentioned by the Court were present; but it is equally true that a correctly worded instructoin was not offered in substitution. An abstract instruction is not inherently erroneous for that reason alone. The instruction in question did not tell the jury something was the law when in fact it was not. We must, therefore, assume that other and correct instructions were given. Affirmed.

---

[3] The law penalizing larceny, Ark. Stats. (1947) § 41-3907, Pope's Digest, § 3134, assesses a penitentiary sentence where value of the property exceeds $10. If ten dollars or less, punishment is imprisonment in the county or municipal jail for not more than one year *and* a fine of not less than ten nor more than $300. Act 198 of 1937. A felony is an offense "of which the punishment is death or confinement in the penitentiary. All other public offenses are misdemeanors." Ark. Stats. (1947) § 41-103-4, Pope's Digest, §§ 2922-3, *Allgood* v. *State*, 206 Ark. 699, 177 S. W. 2d 928.

GEORGE ROSE SMITH, J., dissenting. I think the court committed reversible error in admitting testimony concerning an earlier theft by Thomas Dooley. Appellees' counsel tried the case on the theory that such evidence was admissible. Thomas was repeatedly questioned as to prior thefts; he steadfastly denied his guilt. As no prior conviction was shown, it is elementary that the appellees were concluded by his answers. But counsel insisted that he was entitled to prove other offenses, saying: "I am attempting to prove the little boy is lying. I think I can show it by showing that he has been guilty in the past of the same thing this Sterling Stores manager accused him of. . . . It is material as to whether or not he has been accused of shoplifting before." Of course this is a patently erroneous statement of law, and I do not understand that the majority approve it.

Pursuant to this theory counsel asked officer Roberts if he were called to Lowery's store in 1946 about a little colored boy stealing. Appellants' attorney immediately objected, but the court ruled that the question was proper except for its failure to identify Thomas Dooley. Counsel reframed the inquiry and was allowed to develop his proof over appellants' objections. Roberts was permitted to testify that he was called to the store, that the boy had some pecans in his pocket, that he was taken to the police station, that Thomas Dooley's father came down and was told about "this boy taking the pecans," that Dooley said, "I will attend to him when I get him home," and that the police "released" the boy to his father. In view of this testimony the majority's statement that no attempt was made to prove that the pecans were stolen is to me utterly incomprehensible. That was exactly what counsel, in the presence of the jury, stated he had a right to prove. The jury could have drawn no inference except that Thomas had been accused of stealing pecans, with the result that the police were called, and, after taking the boy to the station, released him to his father for punishment.

Two suggestions are made to support the admission of this prejudicial evidence. First it is said that the

instructions are not fully abstracted; so we do not know what the court told the jury about Roberts' testimony. This is merely an artificial technicality. We do know that the court overruled repeated objections to this line of questioning and also overruled a motion to strike the testimony. Our Rule 9 requires only that the appellant abstract that part of the record that is necessary to an understanding of the questions presented. When it is shown that the trial court persevered in an erroneous ruling, we may safely assume that he did not change his mind when it came time to instruct the jury. For that matter, the appellees would certainly have called our attention to any instruction which might have cured the error, and they have not done so.

The second reason given for affirmance is that since Dooley's parents had testified that Thomas had never before been to town alone, Roberts' testimony was admissible to contradict these statements. To begin with, we have consistently held that a witness cannot be impeached upon a collateral matter. Whether Thomas had been to town before was wholly immaterial to the cause of action stated in the complaint. But even if this theory were accepted, it would have been enough for Roberts to say that he had seen the boy in town alone at Lowery's store. When we allow his additional testimony I think we approve a subterfuge by which prejudicial and incompetent evidence was permitted to reach the jury.

FRANK G. SMITH, J., concurs in this dissent.