GREGORY v. CONSOLIDATED UTILITIES, INC.

4-2710

Opinion delivered October 31, 1932.

*Baker & Gautney,* for appellant.

*Wilson, Kyser, Armstrong & Allen* and *Coleman & Riddick,* for appellee.

MEHAFFY, J. The appellant, H. M. Gregory, owned or controlled all of the shares of the capital stock of the Gregory Bus Lines, a Tennessee corporation. The bus line at the time of the contract between Gregory and others owed debts amounting approximately to $150,000. On May 1, 1928, O. P. Garnett asked Gregory if he would sell all the stock of the Gregory Bus Lines and at what price. Gregory agreed to sell for $400,000, and thereafter wrote the following letter:

"Memphis, Tennessee, May 8, 1928.

"Mr. O. P. Garnett, Memphis, Tennessee.

"Dear Sir:

"Confirming our conversation of today:

"I will undertake to procure and deliver to you all the stock of the Gregory Bus Line for the sum of $300,000.

"I will guarantee the debts of the company not to exceed $100,000.

"This sale is to be consummated on the following basis:

"It is understood that I am to have as my own property cash on hand, notes receivable, and accounts receivable, as of date of transfer.

"If you organize a company to take over the Gregory Bus Lines, with a bond issue, preferred stock, or Class A stock issue, not to exceed $500,000 with a guaranteed dividend of 6 per cent., I will invest of this purchase

money the sum of $100,000 in such stock; or if you should desire to increase that stock so as to have sufficient funds to purchase the Smith Bus Lines, Oliver Brothers Bus Company and the Schofield Bus Company, I will still be willing to invest $100,000 provided the bond issue of preferred stock issue should not exceed $800,000.

"Of the purchase price, there shall be paid $35,000 in cash; and the balance at any time within ninety days, provided that the debts of the company be liquidated by you as they become due.

"This proposition holds good until noon, May 14, 1928.                    "Yours truly,
                              "H. M. Gregory."

After receiving this letter, Garnett undertook to raise the $35,000, which was to be paid cash and secured the subscription of $32,275. Wils Davis thereafter agreed to subscribe $6,000, making a total subscription of $38,-275. Checks for the subscription were delivered to Garnett. There was thereafter some correspondence between Garnett and Gregory, and Garnett and his associates organized in Arkansas a corporation, the Consolidated Utilities, Inc. Thereafter, on May 19, 1928, the parties prepared and executed a contract which is as follows:

"This contract, made this 19th day of May, 1928, by H. M. Gregory for himself and as trustee for the use and benefit of himself and all other stockholders of the Gregory Bus Lines, a corporation, hereinafter called the seller, and Consolidated Utilities, Inc., a corporation organized and existing under the laws of the State of Arkansas, hereinafter called the buyer, witnesseth as follows:

"1. H. M. Gregory agrees to sell and transfer to the Consolidated Utilities, Inc., all the stock of the Gregory Bus Lines for $300,000.

"2. The stock was to be placed in the hands of W. W. Hughes, trust officer of the Union & Planters' Bank & Trust Company of Memphis, to be held by him as security for the payment of the purchase price.

"3. Gregory guaranteed that the debts of the Gregory Bus Lines did not exceed $100,000.

"4. The Consolidated Utilities, Inc., agrees to pay the debts of the Gregory Bus Lines up to $100,000.

"5. The consideration for the stock was to be paid as follows: $35,000 in cash; $165,000 on November 19, 1928, to be evidenced by a note of the Consolidated Utilities, Inc., to Gregory for that amount; and the remainder, $100,000, was to be paid in the capital stock of the Consolidated Utilities, 7,500 shares of Class A and 3,750 shares of Class B stock.

"6. Until the note for $165,000 was paid, no funds of the Gregory Bus Lines were to be applied other than to pay operating expenses—the remainder to go in liquidation of the note.

"7. The Consolidated was to take over the assets and operation of the Bus Line at 11:59 P. M., May 19, 1928. All division of receipts, cost of operation and closing of the corporation by Gregory, and the beginning of operation by the Consolidated, to be figured as of that date and hour.

"8. Gregory was to retain as his own property all cash on hand, and notes and accounts receivable, as of the date and hour mentioned above.

"9. In witness whereof, the seller has hereunto affixed his signature, and the buyer has caused its corporate name to be signed hereto, and its seal affixed, by its duly authorized officers on this the 19th day of May, 1928.

> "H. M. Gregory, Seller,
> "Consolidated Utilities, Incorporated,
> "By W. B. Bayless, President,
> "J. T. Morgan, Secretary."

On July 12, another contract was entered into, and then on November 19, 1928, still another contract. The parties then on February 1, 1929, entered into another contract. It is not important to set out all contracts here. The supplemental contracts entered into by the parties made provision for the payments and manage-

ment, operation and control of the bus lines, and it was agreed that the Consolidated Utilities, Inc., should pay Gregory $200,000, $35,000 to be paid cash and $165,000 to be paid later, and the Consolidated Company was to pay $100,000 of the indebtedness of the Gregory Bus Lines, and Gregory was to pay the balance. The remaining $100,000 was to be paid in the capital stock of the Consolidated Utilities. There are numerous other provisions in the contract, but it would serve no useful purpose to set them out here.

A proceeding was instituted in the United States District Court at Memphis by the Seiberling Tire Company against the Gregory Bus Lines and a receiver was appointed, who took charge of the property and sold same for $205,000. There was also a suit tried in the State chancery court in Tennessee.

The appellant then began this suit in the Crittenden Chancery Court against the Consolidated Utilities, Inc., and numerous individuals. His complaint consists of eighteen typewritten pages, and it is entirely too lengthy to set out in full. However he alleged in his complaint the indebtedness due to him from the Consolidated Utilities, Inc., and the individuals named as defendants, and alleged fraud and deceit on the part of the individuals in inducing him to make the contract and that they fraudulently violated the terms of the contract. The appellees filed answer denying the material allegations of the complaint. The chancery court heard the evidence and entered a decree in favor of the appellant against the Consolidated Utilities, Inc., for $88,000, and found in favor of the individual defendants. The Consolidated Utilities, Inc., did not appeal, but H. M. Gregory has appealed to this court and seeks a reversal of the chancellor's finding in favor of the individuals. The chancellor considered all the evidence including the records in the two suits in Memphis, Tennessee, the testimony of the numerous witnesses and documentary evidence. It would make this opinion entirely too long to set out the evidence. The evidence was conflicting, and there

was substantial evidence to support appellant's claim and also substantial evidence contradicting the evidence of appellant's witnesses. Counsel on both sides have filed extensive briefs citing many authorities on the question of fraud and deceit, but it would be impossible to review them all here.

It is well established that fraud and deceit and fraudulent representations and promises made by a party and relied on by another who is injured or damaged thereby, give rise to a cause of action by the party injured, and one who deprives another of any right by such practices is liable therefor. Any false representations and deceit by promoters of a corporation which induce another to purchase stock, or to enter into any sort of contract to his disadvantage, make the promoters liable to the party deceived. There must however be a false statement, and it must be relied on by the other party.

"Fraud involves the idea of intentional deception, and exists where there is a misrepresentation made with intent to deceive, or with actual knowledge of its falsity. But, while a fraudulent intent is an essential ingredient of actual fraud, and hence must be generally shown in order to maintain an action of deceit, an actual wrongful or fraudulent purpose or intent is not always essential. Moreover, the law affords remedies for the consequence of innocent misrepresentations. Where an act is originally tainted with a fraudulent intent the subsequent abandonment of the intent is ineffectual as against an innocent person who is injured by the act. Actual fraud is the foundation, or, as it is often said, the gist or gravamen of the action of deceit. Proof of a mere naked falsehood or representation is not enough even though the complaining party relied on it and sustained damages, but, in addition thereto, the false statement must have been knowingly or intentionally made. Moreover, the misrepresentation must have been made with the intention of deceiving the complaining party." 12 R. C. L. 323-324.

Therefore, if the individual appellees by false and fraudulent representations or deceit, made to Gregory and relied on by him, caused him to enter into the contract or injured or damaged him in any way, they were liable to him for the injury thus done. Whether or not there has been a fraud in any case is usually a question of fact. Fraud is a question of law only when the facts are undisputed, and but one reasonable conclusion can be reached from the evidence or where there is an entire failure to sustain the issue. 12 R. C. L. p. 444.

One who alleges fraud must prove it by a preponderance of the evidence. Of course, it may be established by circumstantial evidence as well as direct. In fact, it is generally difficult to prove fraud by direct evidence, but, whether the evidence is direct or circumstantial, the burden is upon the party alleging fraud to prove it by a preponderance of the evidence. 27 C. J. pp. 52 and 62.

The evidence in this case is entirely too lengthy to set it forth in this opinion. We have already said that it was in conflict, and that there was substantial evidence offered by both parties. The chancellor found against the Consolidated Utilities, Inc., and in favor of the individuals. We have carefully considered the entire evidence and have reached the conclusion that the findings of the chancellor are not against the preponderance of the evidence, and this court will not reverse the chancery court unless we can say that the findings of fact by the chancellor are against the preponderance of the evidence. *Kelly Trust Co.* v. *Paving Imp. Dist.*, 185 Ark. 397, 47 S. W. (2d) 569; *Greer* v. *Stilwell*, 184 Ark. 1102, 44 S. W. (2d) 1082; *Smith-Arkansas Traveler Co.* v. *General Tire & Rubber Co.*, 182 Ark. 818, 33 S. W. (2d) 712; *Mente & Co., Inc.*, v. *Westbrook*, 181 Ark. 96, 24 S. W. (2d) 976; *Love* v. *Couch*, 181 Ark. 994, 28 S. W. (2d) 1067.

We find no error, and the decree is affirmed.