ROSE *v.* MOORE.

4-5152

Opinion delivered July 11, 1938.

*Harrison, Smith & Taylor,* for appellant.
*James G. Coston* and *J. T. Coston,* for appellee.

MEHAFFY, J. The appellant, Mrs. Katherine N. Rose, borrowed from the American Building & Loan Association $2,500, and to secure the payment of said money, executed a deed of trust to the Building & Loan Association, to certain property in Osceola, Arkansas. After securing this loan, the appellant moved from Osceola to Roseland, Arkansas, where she resided, and on December 18, 1931, she sold the property in Osceola to the appellee, Mrs. Emma Moore.

After considerable discussion the appellant agreed to sell her property for $2,500 cash, the appellee to as-

sume the payment of the balance due to the loan company. Appellee admitted that the appellant told her that the original loan was for the sum of $2,500 and that the payments were $38.33 per month, and that the loan was with the American Building & Loan Association of Little Rock.

It is the contention of the appellee that appellant advised her there were 24 or 26 payments yet to be made. The appellant contends that she advised Mrs. Moore that the loan had been in effect approximately two years, and that all the payments were up to date.

The appellee brought suit in the chancery court of Mississippi county alleging that she had purchased from the appellant a certain lot in the city of Osceola for the consideration of $2,500 in cash and the assumption of the deed of trust with the American Building & Loan Association, that at the time of said transaction appellant represented that there was only $996.58 due on said property, whereas there was a balance due of $2,154.88 together with unpaid amount of taxes in the sum of $42.73; she prayed judgment against the appellant for $1,201.03 with interest from December 18, 1931, and for the further sum of $42.73 and interest thereon. There was filed as exhibit "A" with appellee's complaint copy of warranty deed executed by appellant and her husband, which recited a consideration of $2,500 cash paid by Mrs. Moore, and the assumption and agreement by Mrs. Moore to pay the balance due the American Building & Loan Association of Little Rock on the mortgage on said property.

Appellant answered denying all the allegations of the complaint except that there was a balance of $42.73 due as taxes, and admitted that appellee was entitled to that amount.

The chancery court found that there was an unpaid balance of $2,154.88 secured by the mortgage on said lot in favor of the American Building & Loan Association, and the court further found that the appellant, Katherine N. Rose, represented to the appellee, Emma Moore, that the unpaid balance on said mortgage was

only $996.58; that appellee believed and relied on these representations, and there was thereby a fraud practiced by said Katherine N. Rose upon said Emma Moore. The court found that the appellee was entitled to recover the difference between said sum of $996.58 and $2,154.88 with interest at the rate of 6 per cent. per annum from December 18, 1931, to date, and gave judgment against the appellant for the sum of $1,628.40 and costs. The appellant excepted at the time to the decree and prayed an appeal to this court, which was granted.

The appellee testified in substance that she had known Mrs. Rose a long time and purchased her residence for approximately $3,500. Mrs. Rose told her that she had borrowed $2,500 on the place and that there were either 24 or 26 payments due of $38.33 per month, and that she had all of her receipts and could not tell which it was, but it was either 24 or 26; that she paid Mrs. Rose $2,500 in cash, and that neither party had a lawyer; that appellant told her she would be by on Sunday morning to bring the deed, abstract and tax receipt, but she turned the deed over to appellee that night and said that Mr. Rogers would give her the abstract next morning; that Mr. Rose brought her the tax receipts on Monday after the place was purchased on Friday, and the receipts showed that taxes were paid on Saturday the 19th; that Blackwood Moore, came from Detroit on Christmas Eve day and they together went to Roseland to see Mrs. Rose and asked her about the balance due the Building & Loan Association, and appellant said she only owed 26 months at $38.33, and she figured it out exactly at $996.58. A letter from the Building & Loan Association showed that there was $2,154.88 remaining unpaid. Appellant said that payments had been made to C. L. Moore, Jr., agent of the association, and all except 26 months at $38.33 had been paid. The appellant said, not once but many times, that she would not have to pay but $996.58; she said she had her receipts and would bring them to prove that she was right and the loan company wrong, but she never did bring her receipts; that when she and her son visited Mrs. Rose at Roseland, Mrs. Rose re-

quested Blackwood Moore to figure the amount and he did so and his figures were about the same as those of Mrs. Rose; she called for the abstract before she paid the money, but was told that Mr. Rogers had a little more work to do on it and she could get it next morning; she never did get it and found about two months later that it had been turned over to the Building & Loan Association; she discussed the matter with her brother, Dwight Blackwood, and Mrs. Rose told Dwight Blackwood the same she had told appellee; Mrs. Rose came to her home, delivered the deed, and she counted out to Mrs. Rose $2,500 in cash; Mrs. Rose said she had receipts and would bring them to her.

Blackwood Moore testified, corroborating the statement of Mrs. Moore, the appellee.

Mrs. Eva M. Delony, the secretary of the American Building & Loan Association, testified that it would require $2,154.88 to pay the loan to the Building & Loan Association.

Dwight H. Blackwood, brother of the appellee, testified to the same facts substantially as the appellee, especially with reference to what Mrs. Rose said about the balance due, and that he figured his sister was getting the property for approximately $3,500. He advised his sister not to pay the money until she had received a copy of the abstract and deed of trust.

The appellant, Mrs. Katherine N. Rose, testified about sale of the property and that the mortgage and deed of trust were on record at the court house at Osceola; that Charles Rose told Mr. Blackwood that appellee was getting a nice home for $4,500; that it had been appraised recently at $12,000. The place was rented for $40 a month, and the building and loan payments were $38.33; that she did not tell Mrs. Moore that there were only 26 more payments, but she did tell her that there were 24 or 26 payments already made; she testified about the paper handed her; that it was in her handwriting, but someone had changed the figures from 42 to 22 months; that the figures in the left hand lower corner where $38.33 is multiplied by 26 are not her figures; she at all times

insisted that Mrs. Moore contact Mr. C. L. Moore and ascertain from him the exact amount remaining unpaid.

The appellee, being recalled, testified that Mrs. Rose gave her the piece of paper identified by Mrs. Rose on December 24, 1931; when asked whether or not those statements on there of $38.33 by 26 were the same she delivered to her, she stated that she had another exhibit.

Charles Rose testified that he was present with his mother on the afternoon before the deed was delivered that night and that he told Mr. Blackwood that for $2,500 and the assumption of the balance due the building and loan, that his mother would deliver the deed; the loan was approximately two years old and was originally for $2,500.

Appellant states that there is but one question involved in the determination of this case, and that is whether or not the chancellor was correct in his finding that the appellee was induced to purchase the property in question by reason of fraudulent representation of the appellant. She correctly states that fraud is never presumed, and that the burden of proof is upon the party alleging fraud to prove the same by a preponderance of the evidence.

Appellant calls attention to and relies on *Lange* v. *Mayo,* 173 Ark. 583, 294 S. W. 12. This involved an exchange of lands and a shortage in acreage, and the court said: "False and fraudulent representations as to the acreage, which is material in a land deal, unless relied upon, are not sufficient grounds to avoid a sale or trade, or to prevent the specific performance of the contract. In view of the inspection of the farm made by Lange, the request of the appellees for him to make his own investigation and the testimony of Brummitt and Marshall, it cannot be said that the finding of the chancellor to the effect that the discrepancy in the acreage of cultivated lands, did not induce the trade, is contrary to a clear preponderance of the evidence. With the opportunity afforded Lange to investigate and inspect the farm, it must be presumed that he exercised and relied upon his own judgment in making the contract."

In the case cited it appears clearly that the shortage or the amount of acreage was not relied on by Lange, but that he made his own inspection and determined for himself. This is the only authority referred to by appellant.

We think that the finding of the chancellor is not against the preponderance of the evidence. Mrs. Moore testifies positively that the appellant told her that there were only 26 payments due, and that her son calculated the matter and found that if that were true, the debt to the Building & Loan Association was only $996.58. After the letter was received from the Building & Loan Association appellant still insisted she was correct; that she had her receipts and would bring them to appellee; moreover, she handed appellee a paper with the statement on it that there were 26 payments due.

In testifying that someone had changed the figures in her statement, Mrs. Rose did not claim that the statement on the paper, "Balance due 26 months" had been changed or was incorrect. She was asked: "Mrs. Rose, will you please examine that paper (hands small piece of paper to Mrs. Rose) and say whether or not you ever saw it before?" She answered, "Yes, that is my writing." Q. "Your writing?" A. "Yes." She was then asked: "Will you please file that as exhibit 'A' to your deposition?" A. "I will. May I look at that again? That is my writing but I'll declare there is something wrong with it." Q. "Mrs. Rose, on the back, whose handwriting is that?" A. "I don't know. That is not my handwriting."

Mr. Coston dictated the following into the record:
"Exhibit A
"Amount building and loan.............................................$2,500.00
"Paid 42 months
"Balance due 26 months
"Payments $38.33 per month
"Mrs. R. C. Rose.
"12/24/31."

Appellant, Mrs. Rose (interrupting):
"I beg your pardon that is not 42. Someone has changed that. That is very evident."

Mr. Coston: "It does look like somebody has changed it."

While appellant testifies that the 42 had been changed, she does not say anywhere that the statement "balance due 26 months" had been changed or was incorrect.

We think the evidence shows clearly that the statement that only 26 monthly payments were due was made by the appellant, and that the appellee relied on those statements. According to the evidence of appellee, appellant not only repeatedly made this statement, but furnished a paper on which the statement was made, and appellee is also corroborated by other witnesses in her statement that appellant said there were only 26 payments due. Whether appellant believed these statements to be true or not is immaterial, if made by her and relied on by appellee.

The evidence shows that if appellee had examined the mortgage record she could not have learned from that how much had been paid or how much was due. It is true that fraud must be proved, and is never presumed; but in the instant case we have reached the conclusion that the chancellor's decree is not against the preponderance of the evidence.

It is, therefore, affirmed.