GREEN *v.* BUSH.

4-6644                                          159 S. W. 2d 458

Opinion delivered March 2, 1942.

*W. E. Beloate* and *S. L. Richardson,* for appellant.

*W. P. Smith* and *H. W. Judkins,* for appellee.

SMITH, J.   Thornburgh Masonic Lodge No. 371 of Alicia, Arkansas, hereinafter referred to as the Lodge, was given a deed by one of its members to the half-section of timber land here in litigation.   In 1933, the lodge executed its deed to the land to T. R. Green, for the recited consideration of $1,100, of which $100 was in cash in hand paid.   A vendor's lien was retained to secure the unpaid balance, and the deed recited that the grantee ''in accepting the deed expressly agreed to reconvey the property here conveyed to the grantors thereof in the event of his default in the prompt payment of either the principal or interest when due.''

Green entered into possession of the land, and made some improvements on it, and negotiated a sale of the timber thereon for a thousand dollars.   The lodge objected to this sale, and at the suggestion of its officers a sale of the timber was made to one Polston, who agreed to pay therefor a stumpage of $5 per thousand feet as the timber was cut and removed, and two years were given Polston for that purpose.   Payment for the timber was to be made by Polston directly to the lodge as the timber was sold, and Green was to have nothing to do with the collections.

Green failed to pay the general taxes and the land was forfeited and certified to the state.   Green also failed to pay the drainage taxes, and they were delinquent for the years 1934 to 1939, inclusive, and according to the officers of the lodge Green had defaulted in paying the purchase price.

A committee of the lodge (of which Rolph Bush was a member) called formally on Green who was also a member of the lodge, and as a result of their discussion Green reconveyed the land to the lodge.   Thereafter, for a consideration of $500, the lodge conveyed the land to Bush.   At that time, all the merchantable timber had been removed.

Green refused to surrender possession, whereupon Bush brought suit in ejectment. An answer and cross-complaint was filed, alleging that the execution of the deed from Green to the lodge had been procured through fraudulent representations, and it was prayed that the deed be canceled. The lodge, through its officers, had been made party to the suit. The cause was transferred to equity, where a decree was rendered dismissing Green's cross-complaint as being without equity, from which decree is this appeal.

Green testified that his lodge brothers who interviewed him composing the committee above referred to represented that Polston had paid only enough to pay the taxes and insurance and had paid nothing more, and the lodge wanted him to deed the land back to it and avoid a foreclosure suit, and that Polston would owe him the difference between the amount of the taxes and insurance and the thousand dollars; that they would get him a receipt showing the amount paid by Polston, and would stand by him in collecting the difference from Polston, and that they would do so as Brother Masons. Green testified that the representations made to him as to the amount paid the lodge by Polston were false, and were known to be so, but that he did not ask Polston what payments had been made by him to the lodge, for the reason that they, the members of the committee, assured him that they had checked the records of the lodge and had found that Polston had paid only enough to pay the taxes and insurance. In reliance upon this representation, which Green believed to be true, but later found to be false, he had declined to surrender possession of the land to Bush, who in the meantime had purchased the land from the lodge.

Polston cut the timber and sold it in truckload lots to five different sawmill operators, and he testified that checks given him in payment were indorsed and delivered to Cox, Hughes or Monroe, representatives of the lodge authorized to receive the payments. Cox was the treasurer of the lodge. According to Polston's testimony, he had more than paid the lodge the balance of purchase money at the time Green executed the deed to the lodge.

The truth of this testimony is the principal question in the case. The record is large and the testimony is conflicting. The funds of the lodge were kept on deposit in a local bank, and the books of the bank were introduced showing deposits made by the lodge and its balance on various dates. The largest item was the sum of $286.17.

The court made the following findings of fact:

"As to the payments by Polston to the lodge the court must look to the best evidence. It was the duty of Polston to have taken a receipt for all moneys paid to the lodge and it was Green's duty to keep up with these payments. This was not done. Polston was corroborated in the payment to the lodge of approximately $240, and the lodge denied all other payments. Without receipts or other corroboration to Polston's testimony, and the denial of same by the lodge, leaves the weight of testimony equal on this point, and the court would not be justified in finding against the lodge.

"The 38 or 39 pink timber slips or invoices introduced by Polston are all dated in 1938, beginning in the month of April. The bank balance transferred to the lodge in the sum of $286.17 from the Bank of Swifton was made on February 10, 1938, which bank, the court takes judicial knowledge, failed in the fall of 1937, and the court thinks has no connection with the case, unless it were shown this amount was paid to the lodge by Polston. The most the court can find was paid as a credit to Green was approximately $240 and $60. Deducting the amount of taxes due to be paid by Green would cut the net payment made by Green to the lodge to a nominal sum. Green relinquished all his rights when he executed deed to the lodge, and as between Bush and Green, the court is of the opinion that no testimony was introduced warranting the cancelling of the deed from the lodge to Bush. Decree will be for plaintiff Bush as prayed, and the cross-complaint against the lodge dismissed."

It would serve no useful purpose as a precedent or otherwise to review the testimony which led the court to this conclusion. It may be that Polston deposited in the bank a somewhat larger sum than that found by the court, but not substantially so, and we feel sure, and find the

fact to be, that Polston's payments did not suffice to pay the debt and the interest thereon and the delinquent taxes.

The parties do not disagree as to the law of this case, and it is conceded that the case of *Evatt* v. *Hudson*, 97 Ark. 265, 133 S. W. 1023, announces the principles which would control and entitle Green to the relief prayed if the testimony supported his contentions. But we do not find that the committee of the lodge practiced any fraud upon Green. It is true that the 38 or 39 pink timber slips or invoices referred to by the court in the findings of fact above copied show that Polston sold more than enough timber to pay all Green owed, including insurance and delinquent taxes; but it was not sufficiently shown that the lodge received this money.

This is a suit to cancel a deed upon the grounds that its execution was procured by fraud; which is never presumed, but must be affirmatively proved by testimony which is clear and convincing. *Kincaid* v. *Price,* 82 Ark. 20, 100 S. W. 76; *English* v. *North,* 112 Ark. 489, 166 S. W. 577; *Norsworthy* v. *Hicks,* 170 Ark. 877, 281 S. W. 660.

In our opinion the testimony offered by Green does not measure up to that standard.

Green testified that it was agreed that his purchase money note was to be surrendered to him, and this has not been done. This fact is admitted, but the testimony shows that the note was lost and that it was long past due when the deed was executed and that the lodge gave Green a receipt for the note showing these facts, so that Green suffers no loss through the failure of the lodge to return the note as it agreed to do.

The decree must be affirmed, and it is so ordered.