ROBINSON *v.* WILLIAMS.

5-1948                                            328 S. W. 2d 494

Opinion delivered November 9, 1959.

*Milton McLees,* for appellant.

*Digby & Tanner,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Gertrude Williams, was divorced from James C. Fulmer (now deceased) July 18, 1929. Fulmer had no children at his death. Following the divorce, as part of a property settlement, appellee (then Gertrude Fulmer) received title to certain real property described as Lots 10, 11 and 12, Block 2, Henry's addition to Argenta (now the city of North Little Rock). On that date, appellee con-

veyed said lands to James C. Fulmer for his lifetime, the deed containing the provision that on Fulmer's death the land should revert to appellee. It appeared that in order to allow Fulmer to realize the full use and control of said property, to make improvements and to sell any part of it, in 1934 an agreement was reached thereto and on January 18, 1934, the following instruments were executed by the parties affecting said lands. (1) A quit-claim deed executed by James C. Fulmer to Gertrude Fulmer (the appellee), conveying the whole of the three lots described above, (2) a warranty deed was executed by Gertrude Fulmer to James C. Fulmer, conveying the fee simple title to the south half of said three lots, and (3) a will was executed by James C. Fulmer, in which he devised the south half of said three lots to Gertrude Fulmer. No consideration was paid at that time by the said James C. Fulmer to the appellee, but the agreement of the parties was that the said James C. Fulmer should execute his will, devising to the appellee the property which she conveyed to him on that date, and his will contained, among others, the following provision. ''3. Having on this day entered into an agreement with Gertrude Fulmer whereby she has deeded to me the S½ of Lots 10, 11 and 12, Block 2, Henry's Addition to the City of Argenta, now North Little Rock, Pulaski County, Arkansas, and in consideration for said deed, I hereby will and bequeath to Gertrude Fulmer the S½ of Lots 10, 11 and 12, Block 2, Henry's Addition to the Town of Argenta, now North Little . . .''

The deeds of conveyance were properly filed for record and the last will and testament of James C. Fulmr was delivered to the appellee and remained in her possession from January 18, 1934, when executed, until the date of his death on February 11, 1958.

During his lifetime, Fulmer sold a portion of this property which appellee concedes he had the right to do. The record further reflects that on February 3, 1958, James C. Fulmer executed another will in which, after directing the payment of his just debts and funeral expenses, the will further provided: ''3. Being unmar-

ried, and leaving no child or issue of a deceased child, I hereby give, bequeath and devise all the rest, residue and remainder of my estate over which I have the power of testamentary disposition, wherever located and of every kind and character, real, personal, and mixed, unto Bertha Robinson, presently residing at 4000 Pike Avenue in the City of North Little Rock, Arkansas, to have and to hold the same as her property in fee simple, absolutely and forever. 4. I hereby nominate and appoint the said Bertha Robinson, as Executrix of this, my last will and testament, and direct that she be permitted to serve without bond." The present action was instituted by appellee, first, by petition in probate court and later by agreement transferred to chancery, in which she sought specific performance of the 1934 will as an irrevocable instrument in so far as same affected the south half of the three lots above less that portion conveyed by decedent in his lifetime.

The appellant defended on the grounds that the 1934 will was not an irrevocable instrument; that appellee did not come into court with clean hands, and that appellee had fraudulently transferred title to the property in 1934 to defeat a judgment creditor, that appellee is barred by the principle of estoppel and as an affirmative defense, appellant alleged that she was entitled to receive all of the property of the decedent and occupied the position of an innocent purchaser by virtue of an alleged agreement between the decedent and appellant to devise the property to her in consideration of her performing certain personal services and administering to him, during part of the two last years of his life.

Trial resulted in a decree in favor of appellee. The decree contained this recital: "— the court . . . doth find that the terms and provisions of the written instrument dated January 18, 1934, in the form of a will executed by James C. Fulmer, deceased, devising certain real property hereinafter described, claimed by the plaintiff, was a valid contract to convey, based upon a valuable consideration; that, as such, the same was not subject to revocation by his will dated February 3, 1958,

which has been admitted to probate; that said contract to convey to the plaintiff should be specifically enforced; and that the relief sought by the plaintiff should be granted." This appeal followed.

For reversal, appellant lists her points relied upon as follows: (1) The decree is contrary to the proof and the equities of the case. (2) Estoppel operates to bar appellee's claim. (3) Appellee does not seek equity with "clean hands".

On the record presented we think the issues, when boiled down, consist of two points. First, was the instrument dated January 18, 1934, in the form of a will of the decedent based on a valuable consideration entitled to specific performance, and second, is the appellant, Bertha Robinson, in the position of a *bona fide* purchaser in regard to the property she claims in a devise from the decedent in the 1958 will, and is she correct in her contention "that the agreement which she made with decedent during his lifetime, for her future care and attention, to be given him the rest of his life, which obligation on her part was completely performed, was equally a binding 'contract' supported by a consideration of equal dignity as a money value, by which decedent was bound to devise to her." We consider these two issues together.

On the first point we hold that the trial court correctly held that the 1934 will of the decedent, dated January 18, 1934, was based upon a valuable consideration and entitled to specific performance. We think that the great weight, if not practically all the testimony, supports appellee's contention. The appellee testified that she would not have conveyed the property to the decedent except on condition that it would return to her upon his death. As indicated, the will itself recites that decedent had entered into an agreement with appellee, that in consideration of the deed of conveyance to him, that he had devised the property in question to appellee at his death. The evidence appears to be conclusive that no purchase money was paid by decedent for the conveyance to him, and that the sole consideration was his

unconditional covenant to devise the property to appellee at his death as evidenced by the 1934 will. It further appears undisputed that this 1934 will was delivered to appellee and remained in her possession for some 24 years, until after the death of the decedent on February 11, 1958, when it was submitted to the court for specific performance. It further appears that decedent recognized the binding effect of this will by stating to a daughter of the appellee, on more than one occasion, shortly before his death, that he could not revoke this will and make other disposition of his property. Clearly, we think, in these circumstances decedent lacked the power to revoke his 1934 will with his subsequent will of February 3, 1958. In circumstances similar in effect to what we have here we have consistently held that the appellee was entitled to specific performance of the 1934 will which was, in effect, a binding, irrevocable contract obligating decedent to convey the property in question to the appellee.

The principles of law announced in our recent case of *Janes, Executor* v. *Rogers,* 224 Ark. 116, 271 S. W. 2d 930, apply with equal force here. In that case, the husband and wife simultaneously executed identical wills, devising all their property to the survivor for life and remainder over to their children and step-children. Rogers pre-deceased his wife and she assumed control of the property and about two years subsequent to his death, she attempted to revoke her will and substitute another. The court there held, in effect, that her first will was based upon a valuable consideration and not subject to revocation. We there said: ''It is also well settled that a will is generally ambulatory until the death of the testator, and that mutual or reciprocal wills, may be revoked at pleasure unless founded on, or embodying, a binding contract.

''The fact that the parties have concurrently executed separate wills, reciprocal in terms, is not sufficient of itself, to show that the parties had entered into a contract to make such wills; but the terms of such wills afford some evidence of the contractual relation and,

when read in connection with other evidence which tends to show the execution of the contract, may establish that fact. Page on Wills, Sec. 1710; Annotation on Joint, Mutual and Reciprocal Wills, 169 A. L. R. 9.

"Although it is advisable from the standpoint of good draftsmanship that reciprocal wills embody a reference to a contract for their execution, it is not essential to the establishment of such a contract. See 57 Am. Jur. Wills, Sec. 733 where the author further states: 'An agreement to execute wills containing reciprocal bequests and provisions for the benefit of third persons may result from implication from the wills themselves, the relation of the parties, and other circumstances surrounding the parties, and the execution of the wills, all considered in combination.'

"The case of *Schramm* v. *Burkhard*, 137 Or. 208, 2 P2d 14, involved facts similar to those in the instant case. In upholding and enforcing the oral contract in that case the court stated: 'It is an established rule that equity will not allow one person to receive advantage under a contract and then refuse to perform his part of the agreement, and that, where mutual wills are the result of a contract between the parties making them, which could not be rescinded without the consent of both, and one of them has died and his part of the contract has been carried into execution, equity will not permit the other to violate the agreement but will enforce the contract by declaring the executor, devisee, or other person coming into possession of the property which was the subject of the contract to be trustee for those who would have benefited had the contract been performed.' "

In the present case, no oral contract was relied upon. Reliance here is upon the 1934 will itself which contains all necessary recitals along with the circumstances surrounding the transaction and the parties, together with the corroborated facts.

It appears to us that appellant has utterly failed to disprove any of the circumstances attendant upon execution of the 1934 will. Neither has appellant produced

sufficient testimony to warrant the revocation of this 1934 will.

As to the other issues raised by appellant, but little need be said. Her contention is that appellee did not come into court with clean hands, for the reason that some twenty-four years earlier she had conveyed the property in question to her divorced husband to defraud a judgment creditor; without attempting to detail the testimony on this issue, we hold that the burden is on the party alleging fraud to prove it by a preponderance of the evidence which is clear and convincing, which appellant in this case has failed to do.

In *Biddle* v. *Biddle*, 206 Ark. 623, 177 S. W. 2d 32, we so held. ". . . There is no rule more firmly established than the one that fraud will not be presumed, and the burden is on the party alleging it to prove it by a preponderance of the evidence which is clear and convincing. . . . While fraud need not be shown by direct or positive evidence but may be proved by circumstances, . . . it must reasonably and naturally follow from circumstances proved. . . . Circumstances of mere suspicion leading to no certain result are not sufficient grounds to establish fraud." Citing cases.

On the question of *estoppel,* again little need be said. Appellant argued that because Fulmer (decedent) had conveyed by deed a portion of his property during his lifetime, that appellee is *estopped* to claim the remainder of the property. We do not agree. As we have pointed out above, decedent had the right to convey or dispose of any of the property in question during his lifetime, and appellee, in fact, makes no claim to any of the property which decedent so conveyed, but she does claim, and rightly so, that she is entitled to all of the real property here involved which he owned and was undisposed of at his death.

On the whole case finding no error, the decree is affirmed.