WORDEN *v.* WORDEN.

5-2090                                    333 S. W. 2d 494

Opinion delivered March 21, 1960.

[Rehearing denied April 18, 1960]

*Claude Brinton* and *Bon McCourtney,* for appellant.

*E. D. McGowan,* for appellee.

Ed. F. McFADDIN, Associate Justice.   This is a suit to annul a marriage because of alleged fraudulent representations.   The Chancellor denied the prayed relief; and this appeal ensued.

We refer to the young people by their given names. Harry was in the military service, and returned to Jonesboro for a 15-day leave about the first of November, 1958.   He had a date with Genevive, and coition occurred between them on several occasions between No-

vember 3rd and 14th. In December 1958 Genevive wrote Harry that she was pregnant and that he was the father of the expected child. Harry came home at the end of his military service in February 1959; and on March 1, 1959 he and Genevive were married and lived together until the birth of the baby on May 16, 1959. Then Harry's mother concluded that it was a full 9-months baby and that Harry could not have been the father of the baby. Thereupon, Harry filed the present suit for annulment, alleging that he had married Genevive because she had represented to him that he was the father of her unborn child, and that such representation was known by her to be false.[1] In her answer to the complaint, Genevive insisted that Harry was the father of the child; and also that he had entered into the marriage of his own free will and accord.

Appellant claims the Trial Court was in error in refusing the testimony of a doctor and a nurse. But even admitting, for the sake of argument, the testimony of the doctor and the nurse to have been competent and considered by us on the trial *de novo,* we nevertheless conclude that the Chancery Court was correct in refusing to annul the marriage. On the direct examination of Harry this occurred:

"Q. Did this statement of hers that you were the father of the unborn child, did that have anything to do with you deciding to marry her?

A. Yes, sir.

Q. Then, I'll ask you this, would you have married her had it not been for that statement?

A. I don't know that, sir.

---

[1] The complaint said: "That the representations made by Defendant that the Plaintiff was the father of the unborn child were false and at the time known to the Defendant to be false. That these representations were made to the Plaintiff with the intent and purpose then and there to cause his marriage with the Defendant and that this was the sole reason of the representations. This Plaintiff had no knowledge of the falsity of these representations at that time and believed the Defendant was speaking the truth and because of his belief in these false representations and for no other reason, he entered into the marirage and permitted the performance of the ceremony."

Q. You don't know whether you would or not?

A. No, sir.''

Later, the Trial Court asked Harry these questions:

''Q. Now, Harry, Mr. Brinton asked you why you married Jean and will you tell me again why you married her?

A. Well, I thought—

Q. What he really asked you was: Would you have married Jean at all if she had not told you that she was pregnant by you?

A. I said I didn't know.

Q. You really don't know whether you would or not, is that what you are saying?

A. I might have but I really don't think I would have, no, I'm pretty sure I wouldn't have.

THE COURT: That's all.''

Then, finally, on re-direct examination Harry's attorney asked him:

''Q. Would you have married her at that time had you not believed the child to be yours?

A. I would not have.

MR. BRINTON: That's all.''

The point we are making is, that Harry did not sufficiently establish that he married Genevive *in reliance on her representation to him that he was the father of the expected child,* even if it be conceded that the representation was false. In a suit to set aside an ordinary business contract on account of false representations, the person who seeks to set aside the contract has the burden of establishing: (a) that the representation was false; (b) that the person making the representation knew it was false; (c) that it was made for the purpose of inducing the contract; (d) that the person to whom the representation was made relied on the false representa-

tion; and also (e) *that he would not have entered into the contract except for the false representation.* Some of our cases on general contract law holding in accordance with the italicized language are: *Arkadelphia Lbr. Co.* v. *Thornton,* 83 Ark. 403, 104 S. W. 169; *Ryan* v. *Batchelor,* 95 Ark. 375, 129 S. W. 787; *Jarratt* v. *Langston,* 99 Ark. 438, 138 S. W. 1003; *Brown* v. *LeMay,* 101 Ark. 95, 141 S. W. 759; *Troyer* v. *Cameron,* 160 Ark. 421, 254 S. W. 688; and *Gregory* v. *Consolidated Utilities,* 186 Ark. 406, 53 S. W. 2d 854.

In *Shatford* v. *Shatford,* 214 Ark. 612, 217 S. W. 2d 917, annulment of a marriage contract was sought on grounds similar to those here alleged; and we held that the burden was on the party seeking the annulment to establish the alleged fraud by clear and convincing evidence:

''The burden of proof was on Shannon, as plaintiff, to establish the alleged fraud by clear and convincing evidence. In 55 C. J. S. 938, in discussing proceedings seeking to annul a marriage, this is stated as the general rule: 'The courts will not grant a decree of nullity except on the production of clear, satisfactory and convincing evidence.' Indeed, since marriage is a solemn contract, entered into by license from the State, it is clear that the same *quantum* of evidence is required to set aside a marriage contract for fraud as is required to set aside any other written contract. In *Green* v. *Bush,* 203 Ark. 883, 159 S. W. 2d 458, we said: 'This is a suit to cancel a deed upon the grounds that its execution was procured by fraud; which is never presumed, but must be affirmatively proved by testimony which is clear and convincing. *Kincaid* v. *Price,* 82 Ark. 20, 100 S. W. 76; *English* v. *North,* 112 Ark. 489, 166 S. W. 577; *Norsworthy* v. *Hicks,* 170 Ark. 877, 281 S. W. 660.' The same rule applies in a suit to annul a marriage contract —*i.e.,* the testimony must be clear and convincing. The question now to be considered is whether plaintiff's evidence satisfies that requirement.''

Applying the law, announced in the foregoing quotation, to the case at bar, we conclude that, even if the

representation of Genevive to Harry, that he was the father of the unborn child, was false, still Harry did not establish by the necessary *quantum* of evidence that he relied on such representation. The Chancery Court found that Harry did not rely on the representation as to paternity, and therefore could not obtain annulment. We cannot say that such finding is contrary to the preponderance of the evidence: so we affirm the decree.

The Trial Court reserved for future determination the question of the amount of the hospital bills and doctor bills that Harry should pay, and also the amount of maintenance that Harry should pay for the child. The evidence was not developed as to Harry's ability to make such payments. We, therefore, remand the case to the Chancery Court to reinvest it with jurisdiction for further orders, except we tax the costs against appellant and allow the attorney for the appellee a fee of $100.00 for his services in this Court.

Affirmed.

JOHNSON, J., dissents.