CLAY *v.* BRAND.

5-2911                                                     365 S. W. 2d 256

Opinion delivered March 4, 1963.

*Ralph Robinson, Hardin, Barton & Hardin,* for appellant.

*Theron Agee,* for appellee.

FRANK HOLT, Associate Justice. This is an action to rescind a written contract of sale. By said contract, the appellees, Mr. and Mrs. Brand, purchased from the appellant, Mrs. Clay, a tourist court (Wedgewood) which is located south of Mountainburg, Arkansas. As the basis for rescission, the appellees allege that appellant fraudulently misrepresented to them the adequacy of the water supply and sewage system at the Court. The appellees claim that they reasonably relied upon appellant's assurances of adequacy. Appellant denies making any such representations and asserts the water supply and sewage system are adequate if properly operated. The written contract is silent with reference to the water supply or the sewage system. The trial court granted rescission of the contract and this appeal follows.

The appellant and her former husband, Mr. Houck, now deceased, had owned and operated the Wedgewood Court for about 18 years before the sale to appellees. Originally the court consisted of six units and the appellant later added two units. She also operated a beauty shop at the Court. The water need was supplied from a "bored well" and a 300-gallon storage tank operated by an automatic pump system. The storage tank was added to the supply system by the appellant several years ago.

The appellees, at the time of the purchase, resided in Texas where he was employed as a store manager and she operated a beauty shop. While visiting relatives in Fort Smith in June, 1961, the appellees contacted Mr. Don Roderick, a local realtor, about purchasing a motel or tourist court. Mr. Roderick showed them the Wedgewood Court and appellees (buyers) claim that on June 7, 1961, the day they made the inspection tour of the Court, the appellant (seller) made the alleged misrepresentations.

On July 14, 1961, the contract of sale was signed by the parties and the appellees took possession of the Court the next day. They occupied and operated the Court until early January, 1962. By the terms of the contract the purchase price was $35,000.00. The appellees paid the required $2,500.00 initial payment, the balance to be paid in installments of $310.00 per month. These payments

were made on August 15, September 15, and October 15, 1961. Following the last payment appellees claim they became convinced the water supply and sewage facilities were inadequate and they made no further payments. On December 22, 1961, the appellant, through her attorney, wrote the appellees demanding that they vacate the Court and return possession to appellant pursuant to the terms of their sale agreement.

On December 28, 1961, the appellees filed their complaint in equity seeking rescission of the contract. They also asked for the recovery of the down payment of $2,500.00, the three monthly payments totaling $930.00, the value of the improvements to the property to the extent of $613.75, and cost of repairs to the water and sewage system totaling $250.00.

In granting rescission the court found that the appellant: " * * * made representations, amounting to fraudulent representations, that there was an adequate supply of water in the well on said premises and connected with the water lines and system in the cabins and buildings thereto belonging for the operation of a motel and beauty shop when in truth and in fact there was no such adequate supply of water, which fact was known to the defendant at the time of such representations; that the plaintiffs have met the burden of proof as to fraud by a preponderance of the evidence which is clear and convincing and that they are entitled to a rescission of the contract * * * . " In granting rescission the chancellor awarded recovery only for the $2,500.00 down payment and gave to appellant the choice of paying the $613.75 or allowing the improvements to be removed. There is no cross-appeal.

For reversal appellant urges that the chancellor's findings that the appellant, seller, made fraudulent misrepresentations to the appellees and that the water supply is inadequate are against the clear preponderance of the evidence.

The appellee, Mrs. Brand, testified that the appellant, Mrs. Clay, told her when she inspected the tourist court there was "plenty of water here" and that Mrs.

Clay brought the matter up several times; that Mrs. Clay assured her there was an adequate water supply for the needs of the house, the court and the beauty shop. Mr. and Mrs. Brand testified that the problem of a water shortage began about two weeks after they took possession of the Court and that they made their complaint to the real estate agent, Mr. Roderick, who testified he relayed this complaint to Mrs. Clay. Mrs. Brand testified that: " * * * after we had protested to Mr. Roderick and he acted more or less as embassy for us, that she and Mr. Clay came up there one Sunday afternoon and brought some linens back to the motel, and she told me — she walked out in the back with us, and she walked over there, and she said, 'Now, I will tell you what. We used to buy water from Henry.[1] We got water from him and paid him so much, but you may be smarter. I don't know who owns that property over there that is standing vacant. Just drill you a well right here and try to tap their vein, because it is an everlasting well.' " The appellee, Mr. Brand, testified that during their inspection tour Mrs. Clay represented to him, his wife, and her father, Sam Turner, that there was "enough water to run a beauty shop, do the motel linens, and an adequate water supply." Mr. Turner testified that he was present during the inspection of the Court and heard Mrs. Clay on two occasions represent that there was an adequate supply of water.

The Brands testified that because of the water shortage it was necessary to buy water and have it hauled to the Court on many occasions. Mrs. Brand estimated they had bought approximately twenty loads of water from Everett Tucker. Mr. Tucker testified that he had hauled and sold water to the Brands "quite a few times." According to him, the capacity of the tanks in which he hauled water was 720 gallons.

The Brands testified that they had employed Frank Parker, a plumber, in an effort to correct the shortage. Mr. Parker testified: "Well, I know the last time I was up there I got a call on the well pump, to check the water

[1] Henry Hevron, a former neighbor of Mrs. Clay, was a non-resident of the state at the time of the trial.

pump, and I told them that evidently they just didn't have enough water to furnish the whole court.'' The Brands fixed this date as the latter part of October and thereafter made no further payments. There were other witnesses whose testimony tends to corroborate that of the appellees.

The appellant emphatically denies that the subject of a water supply was ever discussed during the negotiations; that the appellees made any inquiry with reference to this subject, and that she, or anyone in her behalf, ever made any representations with reference to the water supply. She asserts that during the 18 years that she operated the Court and since taking possession again on January 4, 1962, she has never experienced any shortage of the water supply. Appellant claims that the water supply problem was due to the appellees' inability to understand and properly operate the water supply system rather than an actual shortage in the water supply. Several witnesses appearing in behalf of Mrs. Clay corroborated her version of this dispute.

Of course fraud is never presumed and appellant contends that the quantum or degree of proof required to prove fraud is not found in this case. She relies on the case of *Biddle* v. *Biddle*, 206 Ark. 623, 177 S. W. 2d 32, from which we quote:

'' * * * There is no rule more firmly established than the one that fraud will not be presumed, and the burden is on the party alleging it to prove it by a preponderance of the evidence *which is clear and convincing. Irons* v. *Reyburn,* 11 Ark. 378; *Home Mutual Benefit Ass'n.* v. *Rowland,* 155 Ark. 450, 244 S. W. 719, 28 A. L. R. 86; *U. S. Ozone Co.* v. *Morrilton Ice Co.,* 186 Ark. 485, 54 S. W. 2d 282; *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; *Crider* v. *Simmons,* 192 Ark. 1075, 96 S. W. 2d 471.'' (Emphasis added)

The cases cited by the *Biddle* case in support of the quoted rule are not authority for the rule in its entirety. The *Irons* case and *Home Mutual Benefit* case are authority only for the proposition that fraud will not be presumed. The *U. S. Ozone* case states the same rule and goes on to say that the findings of fact by the chancellor

will not be set aside unless against the preponderance of the evidence. The *Russell* case states:

" * * * While fraud will not be presumed, and while the burden is on him who alleges it to prove same by clear and satisfactory evidence, still it need not be shown by direct or positive evidence, but may be proved by circumstances."

The *Crider* case relates that "fraud must be clearly proved" but the court was not there called on to apply that language to the facts since the case concerned an administrator who, acting in that capacity, had sold property in his charge to himself indirectly and the court found that this was legal fraud although the proof may not have been sufficient to find fraud in the ordinary case. We think these cases do not support the quoted rule as to "preponderance of the evidence which is clear and convincing."

We are aware that later cases have quoted with approval the rule as stated in the *Biddle* case. See *Bryan v. Thomas,* 226 Ark. 646, 292 S. W. 2d 552; *Robinson v. Williams,* 231 Ark. 166, 328 S. W. 2d 494. But the "clear and convincing" language seems to have evolved from that line of cases which require that in order to cancel or reform a solemn writing because of fraud, accident or mutual mistake the proof must be clear and convincing. *Eureka Stone Co. v. Roach,* 120 Ark. 326, 179 S. W. 499; *Martin v. Hempstead Co. Levee Dist. No. 1,* 98 Ark. 23, 135 S. W. 453; *Michell Mfg. Co. v. Ike Kempner & Bro.,* 84 Ark. 349, 105 S. W. 880; *Welch v. Welch,* 132 Ark. 227, 200 S. W. 139; *Green v. Bush,* 203 Ark. 883, 159 S. W. 2d 458.

Thus, it appears that two rules of law with respect to proof of fraud have been developed with reference to written instruments. One, the ordinary rule which requires proof of fraud by a preponderance of the evidence and, two, the stricter rule which requires proof of fraud by a preponderance of the evidence which is clear and convincing.

The distinction between the two rules was recognized in *Manhattan Credit Company* v. *Burns,* 230 Ark. 418, 323 S. W. 2d 206 where this court said:

" * * * We think the proof sufficient to establish the fact that the contract was obtained by misrepresentation, and this is so whether the case falls within the ordinary rule that fraud is to be proved by a preponderance of the evidence, *Hildebrand* v. *Graves,* 169 Ark. 210, 275 S. W. 524; *Gregory* v. *Consolidated Utilities,* 186 Ark. 406, 53 S. W. 2d 854; *Rose* v. *Moore,* 196 Ark. 527, 118 S. W. 2d 870, or within the rule that a stricter degree of proof is required when a solemn written instrument is to be upset. *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139; *Green* v. *Bush,* 203 Ark. 883, 159 S. W. 2d 458."

In the present case the written contract is silent with reference to an adequate water supply which is the subject of the alleged fraudulent misrepresentation. Thus, the proof on this subject does not alter or contradict any of the written terms of this contract. Therefore, we believe that the ordinary rule as to proof of fraud by a preponderence of the evidence is applicable in this case.

However, even if the stricter degree of proof were required in this case, we cannot say that the findings of the chancellor are against the preponderance of the evidence which is clear and convincing.

Appellant also contends that the appellees had actual knowledge of the exact nature and limitations of the water system prior to the purchase and cannot now assert that they were misled by any statement of the appellant. It is argued that a casual inspection of the Court would have called to the attention of the appellees a sign in each cabin which stated: "We use water from a bored well, please conserve water, do no washing. If you leave a commode stuck it will pump the well dry." These signs were visible in each cabin on the date the appellees made their inspection. The very existence of these signs could have prompted a discussion of the adequacy of the water

supply which resulted in the alleged fraudulent misrepresentations.

In *Castleman & Son* v. *Schuhardt,* 128 Ark. 445, 194 S. W. 1028, we quoted from *Hunt* v. *Davis,* 98 Ark. 44, 135 S. W. 458, as follows:

''Although a purchaser must act with prudence and diligence in seeking the available means of ascertaining the truth, yet if the seller having peculiar knowledge of the matter, by any misrepresentation or artifice, induces the buyer to rely on his false statement, then the seller will not be heard to say that the buyer could have ascertained the truth. The very representations relied upon may have caused the purchaser to forbear from making further inquiry. If the false representations are made with the intent to induce the other party to act thereon, ordinary prudence does not require the party to test the truth of such representations where they are within the knowledge of the party making them or where they are made to induce the other party to refrain from seeking further information.''

Appellant further contends that the appellees, by their continued occupancy and other affirmative acts, ratified the contract of sale after discovery of the alleged inadequate water supply and have, therefore, waived any right to rescind the sale which they might have had. Neither do we agree with this contention. The appellees made no further payments after they became convinced that there was an inadequate water supply. Under the facts in this case the appellees brought their action for rescission in apt time. *Allen* v. *Overturf,* 234 Ark. 612, 353 S. W. 2d 343; *Ft. Smith Lumber Co.* v. *Baker,* 123 Ark. 275, 185 S. W. 277. Also see *Massey* v. *Tyra,* 217 Ark. 970, 234 S. W. 2d 759; *Kotz* v. *Rush,* 218 Ark. 692, 238 S. W. 2d 634, quoting *Danielson* v. *Skidmore,* 125 Ark. 572, 189 S. W. 57.

Certainly an adequate water supply is a very material factor in the successful operation of a modern motel or tourist court. Mr. Roderick, the real estate agent, testified that the location is the most important factor ''and water would possibly be second'', and ''that it takes

a great deal of water." He, himself, owns and operates a motel. The misrepresentation of a material fact is actionable fraud. *Fausett & Company, Inc.* v. *Bullard*, 217 Ark. 176, 229 S. W. 2d 490; *Massey* v. *Tyra, supra.*

In the instant case the testimony in behalf of the appellees and the appellant is diametrically opposed and in hopeless conflict. The chancellor was in a position to observe the witnesses and evaluate their testimony and, therefore, we cannot say in this case that his findings were against the preponderance of the evidence.

The decree is affirmed.

JOHNSON, J., dissents.