NEELY v. REMBERT.

Opinion delivered December 6, 1902.

1. VENDOR AND VENDEE—PARTIAL EXAMINATION—REPRESENTATION OF VENDOR.—Where one proposing to buy a plantation partially examined it, but abandoned the examination upon being informed by the vendor's agent that coco grass grew over a considerable area of the land, and subsequently purchased it, relying upon the vendor's representation that the objectionable grass was confined to a small area, he had a right to rely upon such representation as if he had made no previous examination. (Page 97.)

2. SALE—RESCISSION—MISREPRESENTATIONS OF VENDOR.—To justify a court in rescinding a sale of land for misrepresentations of the vendor, it must appear (1) that the misrepresentation related to some matter of inducement to the making of the contract; (2) that it worked an injury to the vendee; (3) that the relative positions of the parties were such that the vendee must be presumed to have contracted upon the faith reposed in the vendor's statements; and (4) that the vendee relied, and had a right to rely, upon such statements. (Page 98.)

3. MISREPRESENTATIONS—WHEN MATERIAL.—Where a vendor falsely represented that a plantation contained 3,000 acres, of which 1,100 or 1,200 acres were in cultivation, and that not exceeding 50 acres had coco grass on it, when in fact the plantation contained 2,500 acres, of which 900 acres were in cultivation and 300 were infested with coco grass, the misrepresentations were material inducements to the contract, and were such as to deprive the vendee substantially of the benefits of the purchase. (Page 98.)

4. MISREPRESENTATION—SCIENTER.—A vendor who makes a false state-
ment concerning a fact material to the sale, either with knowl-
edge, or in ignorance, of its falsity, when, from his special means
of information, he ought to have known it, and thereby induces
his vendee to purchase, to his damage, is liable to have the sale
rescinded. (Page 98.)

5. RESCISSION—IMPROVEMENTS.—The value of improvements erected
by a vendee will not be allowed to him on a rescission of the sale
if they were made at a time when he knew, or should have known,
that he would seek a rescission of the sale on account of the
vendor's misrepresentations. (Page 99.)

6. SAME—DAMAGES.—On a rescission of a sale of land for misrepre-
sentations of the vendor, the vendee's expense of moving on the
place will not be allowed, as being too remote. (Page 99.)

Appeal from Phillips Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Affirmed.

STATEMENT BY THE COURT.

Rembert bought of J. C. Neely a plantation in Phillips county,
Arkansas, paying him therefor $32,500. Of this $7,000 were paid
in cash, and notes were executed for balance. Rembert brings this
suit to rescind the purchase, alleging that he was induced to make
it by reason of certain representations made by Neely as to the
extent and quality of the land, which were false. Neely denies
making any representations, and says that Rembert purchased on
his own judgment, after inspecting the land.

Omitting unnecessary details, the facts are substantially as
follows: Rembert was a planter. He had mules, implements and
laborers for farming on a somewhat extensive scale. It became
necessary for him to leave the plantation in Mississippi which
he had occupied during the year 1896, the same "having been
rented from under him." He would sustain great financial loss
unless he secured another plantation, and he had but a short time
in which to secure it. Hearing that Neely had a plantation for
sale, he approached him upon the subject, and acquainted him with
the situation. Rembert was not personally acquainted with Neely,
but from his reputation trusted him implicitly. He explained to
Neely that he desired to purchase a plantation containing twelve or
fifteen hundred acres of cleared land, and fifteen hundred or two

thousand more that were susceptible of being put in cultivation, so as to give him a plantation of 3,000 or 3,500 acres of tillable lands. Neely told him that he thought his Westover place would suit him, requested him to go down and look it over, and gave him a letter to the manager on the plantation, in which Neely requested the manager to furnish him (Rembert) a horse, and to show him the place, stating that Rembert would visit the place with the view of buying it. Rembert went down to the plantation and was riding over the same with Cobb, Neely's manager, and, after having gone some distance, he, Rembert, discovered a patch of blank ground, covered with grass, whereupon he asked Cobb what that was, and Cobb replied, that it was "Louisiana coco." Thereupon he informed Cobb that he did not want to buy a place with coco on it, and proposed to return then and there, but, upon the urgent request of Cobb, went with him to look at a piece of woodland of about 320 acres, which Cobb represented as belonging to the place, and as being very fine land. He asked Cobb, upon the discovery of the coco, how much coco there was on the place, and Cobb told him that it was over that part of the farm—waiving his hand in a certain direction. The part lying in that direction contained about 150 acres. Cobb did not mean that the coco was over the entire 150 acres, but he did not explain to Rembert that such was not his meaning, and Cobb did not know whether Rembert understood that the whole 150 acres was covered with coco or not. After the discovery of the coco, Rembert manifested no further interest in the inspection of the place, and made no further examination with the view of buying it. He went with Cobb to see the 320 acres of woodland, but this was not on the place, and the examination of this was at Cobb's request, and after Rembert had given up the idea of buying the place, on account of the presence of coco. On his return to Mississippi, he wrote Neely that he did not want the place on account of coco on it. A short while after this Rembert met Neely in Memphis, and, in conversation concerning the place, Neely represented that Rembert was mistaken about the coco; that there was only 40 or 50 acres of it on the place in one locality; that it could easily be confined, and was needed for pasture. Such is the substance of Rembert's testimony, and Neely himself, on this point is shown by the record to have testified as follows: "Question. Is it not a fact that you told him (Rembert) that the coco grass was confined to one part of the place, and was all in one body on the

place?   Answer.   Well, I don't remember stating that.   That was my idea about it at the time, that it was confined to a certain locality.   Question.   It is possible, is it not, that you told him it was confined to one locality; that being your belief at the time?   Answer.   From my information from Mr. Cobb, and Mr. Jefferson, it was about forty or fifty acres out there in a certain place that were well settled with coco.   That was what I told Mr. Rembert."

Neely executed a contract agreeing to convey Rembert 3,500 acres of land, "more or less."   A short while after this, the deed was executed, and contained 3,078.05 acres.   Neely says that he called Rembert's attention to the discrepancy between the written contract and the deed as to the number of acres.   Rembert denies this, and says he did not read the deed, and was not advised of the difference between the number of acres in the contract and deed. The preponderance of the evidence is perhaps with Neely on this point.   Neely represented that there were eleven or twelve hundred acres in cultivation.   There were 900 acres in cultivation, and 2,545 acres in the whole place as shown by the survey.   There was, therefore, a difference of 533 acres between the number of acres called for by the deed and the number of acres in the plantation delivered to Rembert; and a difference of 200 or 300 acres between the land actually cleared and in cultivation.   There was evidence tending to show that in the spring of 1897 and the winter of 1898 there were from 225 to 300 acres of coco grass in one body on the place, and that there were patches scattered about over nearly all the place.

Coco grass is shown to have been exceedingly deleterious to farming lands.   It grows and spreads rapidly, rendering the land beset with it very difficult to cultivate.   Rembert had heard of its pernicious effects, but had never seen it before he saw it on the Westover place, and was not familiar with its effects or appearance. It was winter, and the grass at that season is not so easy of discovery as in the spring and summer, and especially so to one not familiar with it.   Other facts will be stated, if necessary, in the opinion.

The court rendered a decree canceling the sale of said plantation to the plaintiff by the defendant, J. C. Neely, and ordering the deferred purchase money notes given for the same to be surrendered and cancelled, and gave a decree against defendant, and in favor of plaintiff, for the $7,000 cash payment, with 6 per cent. interest

from the time it was paid, and fixed said amount as a lien upon said land, and appointed a master, and directed him to take an account, charging the defendant, Neely, with the value of all permanent improvements placed on the land by the plaintiff and all taxes paid by the plaintiff thereon, and to credit defendant with the value of the rent of the land from the date of Rembert's deed to the date of the decree, estimating the rent of the land according as it might be affected by the improvements put thereon, but directed said master not to take any account of the costs and expense incurred by plaintiff in moving on to the place, on the ground that this cost and expense would probably not be recoverable in this action. And further decreed that the cross complaint of defendant be dismissed, and that defendant pay all costs of the cause.

Thereupon the master ordered to take the above-mentioned account proceeded to hear additional testimony, and make his report, in which he states that he finds, from all the proof, that there were only 923 acres of land on the place really available for cultivation, and that 300 acres of this was .sodded or set in coco grass, rendering it valueless for cultivation, and leaving only 623 acres of the land upon which rent should be charged; and that from the proof he finds that, after repeated efforts, only $1,000 of rent could be obtained for the same per year; and thereupon charged plaintiff with that amount of rent for the two years which he had occupied the place. He then gave the plaintiff credit with taxes, improvements and betterments, the sum of $1,955.82, which deducted from the rent, left a balance of $44.82 due defendant from the plaintiff.

On the coming in of this report, the court set aside the findings of the master, as to the rents, and fixed the same at $1,500 per year, or a total of $3,000, and also disallowed a charge made by plaintiff of $895 for clearing land, and re-stated the account, bringing plaintiff out in debt to defendant thereon the sum of $2,084.70, and decreed that this amount be set off against the $7,000 due plaintiff from defendant, on account of the cash payment made on the land.

Defendant thereupon appealed to the supreme court from the former decree of the court rescinding the purchase of said place, and also the decree entered upon said account; and the plaintiff also appealed to the supreme court from the action of the court in correcting the findings of the master in said report, in disallowing

the item for $895 for clearing land, and in fixing the rental value of the property for the two years at $1,500 per annum—both appeals being granted by the court.

*R. W. Nichols, S. M. Neeley, Norton* and *Prewett,* for appellants.

In order to affect the validity of the contract, the misrepresentation must relate to some matter of inducement in making the contract. 11 Ark. 58; 47 Ark. 148-164. The appellee, having examined the property, cannot be allowed to say he was misled by the misrepresentations. 2 Pom. Eq. § 893; 2 Ld. Raym. 1118, 1120; 6 Cl. & Fin. 232; 5 De. G. M. & G. 126; 17 Bear. 234; 24 Ark. 244. There can be no rescission of the deed. 27 Ark. 251. Where there is no bad faith, there is no fraud. 4 Ark. 497. For the statements of appellant to have been fraudulent, they must have been known to be false. 22 Ark. 205, 459; 31 Ark. 170-174; 23 Ark. 229; 47 Ark. 149; 1 Sug. Ven. 1, 2, 3. There can be no rescission in this case for deficiency in quantity. 46 Ark. 337. The vendee can only have an proportionate abatement. Pom. Con. 427; 19 Ark. 110; 46 Ark. 337; 61 Ark. 120; 67 N. C. 463; 1 Sug. Ven. 435; 29 Pa. St. 205; 49 N. Y. S. 857; 22 App. Div. 223.

*St. John Waddell,* for appellee.

The misrepresentations were fraudulent. 1 S. & M. 443; 3 S. & M. 78; 30 Ark. 686, 536; 66 Ark. 433; 28 Miss. 340; Story, Eq. Jur. §§ 191-193; 18 Pick. 95.

*St. John Waddell* and *Rose, Hemingway & Rose,* for appellee.

The representations of appellant were fraudulent. 3 Cr. 270; 13 Pet. 30; 5 Johns. Chy. 174; 6 Ves. 180-189; 103 Mass. 503; 14 Mich. 104-123; 42 Vt. 121; 54 Fed. 87; 72 Fed. 387; 12 U. S. App. 1, 3, 6; 4 C. C. A. 199; 54 Fed. 87; 111 U. S. 155; 4 S. C. 360; 3 Cranch, 270; 3 Story, Eq. Jur. 700, 732, 733; Fed. Cas. No. 3960; 19 Minn. 32; 117 Mass. 195; 138 Mass 437; 18 Pick. 95; 3 Story, 659; 12 Fed. Cas. 566, 577; 16 Fed. Cas. 1016, 1019, 1020; 29 Fed. Cas. 1718; 19 W. Va. 438-467; 42 Vt. 121; 103 Mass. 503; 32 Ark. 326; 4 B. Mon. 601; 44 N. W. 839; 69 N. W. 1049; 1 Story, Eq. Jur. 172; 6 Fed. Cas. 1157. Appellee had a right to assume that the deed conformed to the

contract. 108 U. S. 132, 142. Appelle had a right to rely on appellant's representations. 47 Ark. 335; 24 Fed. Cas. 392; 14 Mich. 123; 19 W. Va. 474; 30 Ark. 691; 1 Story, Eq. Jur. 172; 6 Fed. Cas. 1157. Appellee has a right to rescind the contract. 22 Ark. 205; 27 Ark. 251; 4 Ark. 467; 30 Ark. 535; 54 Fed. 87; 46 Ark. 337. A master's finding should not be disturbed unless clearly erroneous. 144 U. S. 104, 118; 102 Mass. 480; Sand. & H. Dig. §§ 5951-5963.

WOOD, J. (after stating the facts.) The fact that Rembert began an inspection of the plantation before his purchase gives us pause. For, says Mr. Pomeroy, the plainest motives of expediency and justice require that such a one "should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled." 2 Pomeroy, Eq. Jur. § 893. One ground of the rule is stated to be the practical impossibility, in any judicial proceeding, of ascertaining exactly how much knowledge a party who has examined before purchase has obtained by his inquiry, and the opportunity which a contrary rule would give to a party of repudiating an agreement or other transaction fairly entered into, with which he had become dissatisfied. *Id.,* note.

But we have reached the conclusion that the finding of the chancellor that Rembert abandoned further inspection of the place, with the view of purchase, after the discovery of coco, is not clearly against a preponderance of the evidence. We say "the finding of the chancellor," for, unless he found this, there is no warrant in law for the decree. Rembert testified that when he discovered the coco he determined that he would not buy the place. He may have concluded at that time, from the remark of Cobb "that the coco was on that part of the place" (waiving his hand in a certain direction), that the coco was over that entire portion of the place, being about 150 acres. At any rate; Rembert says that after this he only went with Cobb to examine the 320 acres of woodland, at Cobb's request. Cobb corroborates Rembert that, after the discovery of the coco, he (Rembert) "seemed to take no further interest in the place," and went with him (Cobb) to inspect the woodland at his request, and that they made no other inspection. Rembert said he did not want a place with coco on it, and he made no inquiry

about boundaries, and he did not ride over or inspect any other woodland, or any other portion of the place.

So, we conclude that Rembert sincerely abandoned all intention of purchasing the place and further inspection thereof after the discovery of the coco, and that what inspection he had already made was not sufficient to enable him to determine for himself either the quantity or quality of the plantation which he afterwards purchased; and that, as to these, he relied and had the right to rely, upon the representations of Neely. In this view, appellee's case meets every test prescribed by this court for maintenance of suits of this character, which tests are as follows:

"*a.* Was the fraud material to the contract; did it relate to some matter of inducement to the making of the contract?

"*b.* Did it work an injury?        •

"*c.* Was the relative position of the parties such, and their means of information such, that the one must necessarily be presumed to contract upon the faith reposed in the statements of the other?

"*d.* Did the injured party rely upon the fraudulent statements of the other, and did he have the right to rely upon them, in full belief of their truth?" *Matlock* v. *Reppy,* 47 Ark. 148.

The representations, or, rather, misrepresentations, of Neely as to the area of the plantation were material. He represented, by his deed, that the plantation conveyed contained 3,078.05 acres, more or less. The actual survey showed 2,545 acres, or a difference of 533 acres. He represented the cleared land in actual cultivation to be eleven or twelve hundred acres, whereas the actual survey showed 900 acres.

Rembert wanted a plantation that contained at least three thousand acres of land susceptible of cultivation. Instead, he gets a plantation containing 2,545 acres in all, and with not more than fifteen or eighteen hundred susceptible of cultivation. These discrepancies are too great to be remedied by abatement in the purchase price, or by suit on warranty. They go to the very foundation of the contract of purchase, and shatter it. They were material inducements to the contract, and were such as to deprive the appellee substantially of the benefits of his purchase. *Fitzhugh* v. *Davis,* 46 Ark. 337. The same may be said, also, of the representations concerning the coco grass. *Oswald* v. *McGehee,* 28 Miss. 340.

Appellant contends that the false representations are not

ground for equitable relief in this action, "unless the vendor knew them to be false, and the vendee had no means of discovering their falsity." This is not the law applicable to positive statements or representations of fact (and not of opinion) which were substantial inducements of the contract. "A vendor who makes a false statement regarding a fact material to the sale, either with knowledge of its falsity, or in ignorance of its falsity, when from his special means of information he ought to have known it, and thereby induces his vendee to purchase, to his damage, is liable, in action at law, for the damage the purchaser sustains through the misrepresentation, or to have the sale rescinded in a suit in equity, at the option of the purchaser." *Moline Plow Co.* v. *Carson,* 72 Fed. Rep. 387, and numerous authorities cited in appellee's brief.

The court did not err in setting aside the finding of the master as to rents. The court doubtless concludes, from the testimony of Neely as to what this place rented for in connection with another place and as to the number of bales of cotton raised on the place each year, that its fair rental value was fifteen hundred dollars per year. We do not see that the court's finding is clearly erroneous. Nor did the court err in disallowing appellee's charge for improvements. These were made when he knew, or should have known, that he would seek a rescission of the sale of on account of the presence of the coco grass.

Appellee's expenses for moving on the place were too remote. They cannot be considered as the direct and proximate result of appellant's misrepresentations. Appellee was under the necessity of moving somewhere, and would have done so, even if he had not moved on the plantation bought of appellant.

We find no error upon the whole case, and the judgment is therefore in all things affirmed.