MASSEY *v.* TYRA.

4-9339                                                  234 S. W. 2d 759

Opinion delivered December 18, 1950.

N. J. *Henley,* for appellant.

W. F. *Reeves,* for appellee.

LEFLAR, J. This is a bill in equity brought by Mr. and Mrs. Joseph W. Tyra (hereinafter called Tyra) for rescission of a contract for purchase of land, recovery of the $1,500 down payment, and reimbursement for certain expenses incurred on the land before rescission. The ground alleged for rescission was misrepresentation by defendants[1] of adequacy of the water supply on the land. The Chancellor found that there was misrepresentation justifying a decree of rescission, and ordered repayment of the amount received by defendants on the purchase price, but denied recovery for any expenses incurred by Tyra. An intervener, Al Davis, asked for and was allowed a materialmen's lien "upon the lands aforesaid" for $509.68 to be recovered "of and from the plaintiffs and defendants", though payable primarily out of the $1,500 which Tyra was held entitled to get back from defendants. Defendants appealed, and Tyra cross-appealed.

Tyra is a pensioned city fireman from Long Beach, Calif., who wished to retire in the Ozarks. He told de-

[1] One defendant, Mary Massey, disclaimed interest in the suit, since she holds title to the land merely as a trustee for the Citizens Bank of Marshall, Ark., and the Reconstruction Finance Corporation, true owners of the land, also defendants, who acted through defendant Albert Wheeler, a real estate agent, in making the sale to plaintiff Tyra.

fendants' real estate agent, Wheeler, that he was looking for a place where he could live, operate a small business, and raise some dairy cattle and hogs. In this connection he emphasized the importance of a good water supply. Wheeler showed Tyra the place in question, which included about 100 acres of hill land with a house fronting on U. S. Highway 65, about three miles northwest of St. Joe, Ark. A part of the house constituted living quarters for a family, and the rest was equipped and used as a public restaurant. This was what Tyra was looking for, but before closing the deal he asked specifically about the water and made it clear that he would not purchase unless the water supply was sufficient for stock raising as well as for the home and restaurant. Wheeler told him there were two good springs on the land, suitable for watering stock, and that the 358-foot well near the house produced an ample water supply. On the basis of these representations Tyra on March 14, 1949, contracted to pay $9,000 for the place, and made the $1,500 cash payment which he now seeks to recover.

When Tyra took possession of the premises about two months later he found that the well pumped only around 50 gallons of water each 24 hours, this amount being far less than enough to supply the house and restaurant. His first thought was that the pump was not operating properly and, on recommendation of Al Davis, plumber from Harrison, he first replaced part of the pipes, then replaced the whole pump, at a cost of $509.68. When these changes were completed, about a month after they moved on the place, the plumber finally told Tyra that he had a dry well. It was producing no more water than before. Tyra also made a search for the springs that were said to be on the place, but was unable to locate them. He complained to defendants, but they did nothing, merely telling him the water supply was adequate.

In the meantime he had made certain other improvements on the premises—repairs to the kitchen and living room at an asserted cost of $255, and fence repairs costing $89.75. The testimony indicates these repairs were

made before Tyra learned that the well was practically a dry hole.

In the complaint seeking rescission, Tyra asserted that "plaintiffs are ready and willing to comply with their contract and make all payments contracted if defendants will furnish the amount of water necessary to supply the home, the cafe and the livestock which plaintiffs informed the defendants they would need, and since they refuse to do anything, they are left without remedy except to have the contract rescinded." At some time during the controversy, however, Tyra moved off the land in question, to another place.

The first part of the trial was held on Nov. 1 and 4, 1949, at which time most of the evidence was taken. Defendants' position at this hearing was that the springs and well were adequate as represented, and that there was no real shortage in the water supply. Defendants introduced numerous witnesses who so testified. Tyra and his witnesses of course testified to the contrary. The Chancellor then declared an extended recess in the trial.

During the recess, he designated the attorney for the plaintiff and the attorney for the defendant as viewers to go on the land and see if the springs were there. They went over the land in December, 1949, accompanied by Tyra and the realtor Wheeler, and filed a report saying "there are no springs of any kind on the tract."

In February, 1950, defendants sent a driller to the place and deepened the well about 50 feet. At this depth it showed a regular and substantial supply of water. At the resumed trial in March, 1950, defendants admitted that the water supply from the well had been inadequate previously, but took the position that it was now adequate, and that Tyra was bound by the statement in the complaint, quoted above, to the effect that plaintiffs were willing to abide by the contract if defendants would furnish an adequate water supply. Tyra contended that this change in the theory of the defense came too late.

On this the Chancery Court sustained Tyra's view. The holdings were that Tyra had lost the right to rely on misrepresentations concerning the springs by his own failure to check on them at the beginning, when he had ample opportunity to do so, but that the misrepresentation concerning the well did give him a right to rescind which was not lost by the defendants' later renovation of the well. As to expenses incurred by Tyra on the well, the house and the fence, however, the Court held Tyra could not recover because he "should have found the falsity of the representations as to the supply of water that the well would furnish within three or four days after he took possession of the land and premises", and should not be allowed to recover for expenditures made thereafter.

We hold that the Chancellor was correct in his conclusion that defendants' misstatements concerning the character and amount of the water supply constituted material misrepresentations. They went to the very nature and quality of the premises purchased, and their fitness for the purposes for which Tyra made clear to defendants that he was making the purchase. This in the circumstances justified rescission of the contract. *Yeates* v. *Pryor,* 11 Ark. 58; *Kincaid* v. *Price,* 82 Ark. 20, 100 S. W. 76. And, see, *Fausett & Co.* v. *Bullard, ante,* p. 176, 229 S. W. 2d 490.

Defendants' effort to remove the defect in the water supply, long after Tyra's suit was filed and the case went to trial, did not destroy the right to rescind. "The law is expressly written, that the right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill. . . . And it would seem to be against the policy of a court of chancery to allow a defendant to cut off, or to modify the relief to which the whole case may show the plaintiff to have been entitled upon the condition of the case when the suit was begun, by the use of legal process or remedies after the defendant is brought into a court of equity, there to make his defense." *Hornor* v. *Hanks,* 22 Ark. 572, 580. And, see,

*Vandergriff* v. *Vandergriff,* 211 Ark. 848, 202 S. W. 2d 967.

Nor did the quoted statement in Tyra's complaint, even if interpreted as an offer to abide by the contract should water be later furnished, remain open as a continuing offer which could be accepted by defendants at any indefinite future time. The complaint containing the alleged offer, filed on July 29, 1949, was answered by pleadings which declared that the water supply was sufficient, and that was the defense relied upon at the trial in November. It was only during the long recess in the trial, after it had become fairly apparent that the true facts would not sustain the original defense, that defendants attempted by redrilling the well in February, 1950, to shift their defense and accept the so-called offer contained in the complaint. By that time the offer, if it was one, was terminated. Defendants had rejected it both by their pleadings and by their defense at the trial, and on its rejection it ceased to exist as an offer. Restatement, Contracts, §§ 35, 36; Williston, Contracts, § 51.

The next question is on the cross-appeal, as to what relief Tyra should receive as an incident to the rescission. His right to have back the $1,500 down payment is of course clear. The Chancellor held that Tyra's delay in inspecting the premises fully and in discovering the true facts about the water supply promptly, after he had fair opportunity to do so within the first three or four days of his occupancy of the land, barred any recovery for expenditures thereafter made. In this we believe that the Court's conclusion went further than was justified by the preponderance of the evidence.

It is true that a purchaser may not on rescission recover for expenditures made by him on the land after he knew or in good conscience should have known that the contract of purchase would be rescinded, at least when his expenditures add nothing to the value of land, as was the case with the $509.68 expended by Tyra on the well. *Neely* v. *Rembert,* 71 Ark. 91, 71 S. W. 259.

But the evidence indicates that when Tyra made the expenditures on the well he was in good faith assuming that the contract was valid, that he had no grounds for rescission, and that the well would produce a plentiful supply of water, as represented, if he could only get the pumping machinery to work properly. Perhaps some other person more suspicious than Tyra, or better acquainted with the nature of hill country wells and pumps, would have given up sooner than he did and have recognized at once that the well was practically a dry hole. Under the circumstances, however, there certainly was nothing reprehensible or improper in Tyra's continuing, as long as he did, with the effort to make a success of his deal with defendants. That Tyra acted in good faith is evidenced by the fact that he thought, and had every reason to think, that he was spending his own money on the well. His outlay on the well was a direct consequence of defendants' misrepresentation to him that there was plenty of water in the well; the outlay was made before he learned from the plumber Al Davis that the well was dry; and it was made in a proper effort to correct the very fact which, unknown to him, defendants had misrepresented.

We hold that the amount thus expended on the well may be recovered by Tyra even though it added nothing to the present value of the premises. This is on the same theory followed in *Holland* v. *Western Bank & Trust Co.*, 56 Tex. Civ. App. 324, 118 S. W. 218, where a plaintiff entitled to rescission of a contract for purchase of Mexican land was held also entitled to damages for money expended by him in attempting to utilize the property; in *Vanderbilt* v. *Bishop*, 188 Fed. 971, where rescission was accompanied by an award as damages of the amount expended by plaintiff in the care and cultivation of a misrepresented orchard on the premises; in *McRae* v. *Lonsby*, 130 Fed. 17, where rescission of a contract for purchase (for salvage purposes) of a sunken ship was accompanied by an award of damages in the amount of expenses reasonably incurred in trying to raise the hull before its true condition, falsely misrepresented, was

discovered; and in *Klim* v. *Sachs*, 92 N. Y. S. 107, 102 App. Div. 44, where a plaintiff entitled to rescission was also allowed damages covering expenses incurred in making a search of the title and a survey of the premises. This $509.68 expenditure was a direct and reasonably foreseeable result of defendants' misrepresentation, and recovery on account of it should be allowed.

As to Tyra's asserted expenditures of $255 in improving the kitchen and living room and $89.75 in repairing the fence, a somewhat different measure of recovery is proper. Since these expenditures, according to the evidence, were made during the time when Tyra still in good faith believed that there was no such defect in the water supply as to require rescission, he is entitled to some reimbursement for them. But the measure of damages for such improvements is the amount by which the value of the premises was enhanced by them. *Halcomb* v. *Ison*, 140 Ky. 189, 130 S. W. 1070; Black, Rescission and Cancellation, § 636; Annot., 48 A. L. R. 12,64. The recovery should not exceed Tyra's actual outlay for the improvements in any event, but it may be less if defendants show that the cost was greater than the enhancement in value.

This issue of enhanced value was not passed on in the Chancery Court, since it was there mistakenly held that the improvements were made too late to permit any recovery on account of them, and the record does not include any evidence on the specific point of enhancement of value. In such a situation it is proper for us to remand the case for additional proof on the point not fully developed. *Brizzolara* v. *Powell*, 214 Ark. 870, 218 S. W. 2d 728. We do so, with directions that the Chancery Court allow plaintiff Tyra to recover, in addition to his $1,500 down payment and the $509.68 expended on the well, the amount by which the value of the premises was enhanced, as of the date of the complaint, by Tyra's work on the house and the fence. Tyra should have a lien on the land to secure the payment of the total due him.

There is one other point on which the decree below was in error. This is as to the scope of the materialmen's lien given to the plumber Al Davis, apparently under Ark. Stats. § 51-701, for his $509.68 bill against Tyra for work on the well. This work was done by Davis for Tyra. Tyra was not defendants' agent in contracting for the work; he was contracting for himself only. The decree provided that Davis should recover this sum "of and from the plaintiffs and defendants" and gave him a lien "upon the lands aforesaid." Actually, this debt was owed by Tyra only, and under the statute the lien could exist only on his interest in the land, and not on defendants' interest. *Roberts* v. *Tice,* 198 Ark. 397, 129 S. W. 2d 258, 122 A. L. R. 1177; *Judd* v. *Rieff,* 174 Ark. 362, 295 S. W. 370; *Snodgress* v. *Huff,* 234 S. W. 2d 505. Tyra's interest in the land now exists only in the form of his rights against defendants under the decree to be entered in this case, but it is proper that the materialmen's lien be good against his interest in this changed form, and we so hold.

The case is remanded for further proceedings and entry of a decree in accordance with this opinion.