## Anthony RAGAR *v.*
## JACK COLLIER EAST COMPANY, INC.

74-148                                    515 S.W. 2d 205

Opinion delivered November 12, 1974

*Thurman Ragar Jr.,* for appellant.

*Beresford L. Church Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Jack Collier East, Inc., hereafter called East, instituted suit against appellant, Anthony Ragar and his then wife, wherein East sought to declare in default a promissory note secured by a mortgage on appellant's home because of the failure of Ragar to pay a $312.50 mortgage insurance premium, which, because of error on the part of an East employee, had not been collected at the time of closing. Ragar denied that he owed the premium; the court found that appellant was not in default, denied the foreclosure, but gave appellee judgment

for the $312.50. From the decree so entered, appellant brings this appeal.[1]

For reversal, three points are alleged, but all relate to whether there was a mutual mistake, or a unilateral mistake on the part of appellee.

The evidence reflects that appellant purchased a home in Little Rock belonging to Roy Rainey through John Hughes, a realtor of Little Rock. It was necessary that the purchase be financed, and Hughes contacted several mortgage bankers to ascertain interest rates and closing costs; he and Ragar decided that appellee was the most competitive of the ones contacted. Thereafter, the loan was processed, but at the time it was closed, Rosa Perrien, Secretary of Standard Abstract & Title Company, who prepared the closing statement and handled the closing, failed to collect a charge for a mortgage insurance premium of $312.50. Ms. Perrien testified that this was not collected because appellee company had failed to instruct her to collect it. The charge for coverage, termed MGIC,[2] insures the mortgagee that the borrower will pay the ' top portion''[3] of the loan. Linda House, an employee of Jack Collier East, testified that she prepared the closing instructions and initial Truth in Lending statement for the Ragar loan and that she made an error. The witness said that she had only been in that particular department for approximately one month, and that the mistake occurred because of inexperience. Ms. Perrien testified that about a week after the loan was closed, Linda House called her, telling her about the mistake, and asked Ms. Perrien to contact Ragar and explain to him that the amount had not been collected due to such mistake. The witness said that Ragar told her he would send her a check, but the next day called and said that he had talked with his attorney; that he did not feel that he had to pay the premium and he would not send the check.

---

[1]Appellee cross-appealed because of the failure of the court to order the foreclosure, but the cross-appeal is not here pursued.

[2]Mortgage Guaranty Insurance Company.

[3]First 20%, the balance of the payments being secured by the mortgage.

Thomas Purifoy, Vice President of appellee company, testified that Mr. Ragar was aware that the mortgage insurance charge would be made because he (Purifoy) discussed the matter with Ragar himself.

Hughes testified that all bankers have a mortgage insurance requirement, and he said that he discussed with the Ragars the down payment and all closing costs. When asked if he discussed the mortgage insurance requirement, Hughes replied, "Definitely"; that the matter was mentioned several times.

Mr. Ragar testified that he did not have any conversations with East employees about Mortgage Guaranty Insurance premiums; and that he did not discuss two ways of handling the insurance, as testified to by Hughes. He said that he didn't understand what the MGIC insurance was for; the witness stated that Rosa Perrien called him, notifying him that there had been a mistake, not a week after the closing (as she had testified) but rather two weeks later. He said that he told her that if he owed the amount, he would pay it, but that he subsequently talked with attorneys, and on the advice of the latter, told Ms. Perrien that he had been advised he didn't owe it. Subsequently, Purifoy called him about paying the money, but Ragar replied, "I have been advised that I do not owe the money, and I said 'I couldn't pay you right now if I wanted to, because I don't have it'." The only other pertinent fact to mention is that the Truth in Lending statement, prepared by Linda House, did not include the $312.50 charge.

The Truth in Lending Statute, 15 USCA § 1640, provides:

"(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connec-

tion with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

(b) A creditor has no liability under this section if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to insure that the person will, not be required to pay a finance charge in excess of the amount or percentage rate actually disclosed.

(c) A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[4]

Here, we do not have a case where a charge was erroneously itemized, but rather where the charge was not reflected in the closing statement. Nonetheless, the provisions just quoted would appear to be applicable, for Ms. Perrien testified that Ragar was notified of the mistake (in not including the charge) in approximately a week. Ragar testified that he was not notified for two weeks that a mistake had been made. Be that as it may, we have not only a conflict of when the notice was given (in which case the chancellor would properly determine the conflict of evidence), but actually, under Ragar's own testimony, he was notified within 15 days; not only that, but the record clearly discloses that he did not send to appellee any written notice of the error, nor did he institute

---

[4]We have not included subsections (d) and (e) because they are not pertinent to this cause of action.

any action. So — appellant is not entitled under the Truth in Lending Act to any relief.

It thus appears that the litigation is to be determined simply on the basis of which witnesses the trial court believed, although appellant argues that the mistake occurred only on the part of East, i.e., there was a unilateral mistake, and therefore parol evidence was not admissible. But it is apparent that if the court believed appellee's witnesses, the failure to include the charge in the closing statement really constituted a mutual mistake, i.e., both parties already understood that the charge would be made. Parol evidence is admissible to show a mutual mistake. *L. O. Galyen and Freda Galyen v. Mrs. Opal Gillenwater,* 247 Ark. 701, 447 S.W.2d 137. Certainly, the testimony concerning the date the appellant learned of the mistake was pertinent to the issue, and the testimony of Hughes and Purifoy relative to the fact that Ragar had been informed that such a charge would be made was strong evidence of a mutual mistake.

As stated, in the final analysis, we consider that only fact questions were involved, and where the crucial issue is the credibility of the parties testifying, the chancellor is considered to be in a much better position than the appellate court to test such credibility. *Dearien v. Lancaster,* 221 Ark. 98, 252 S.W.2d 72. The testimony of appellee's witnesses, evidently believed by the chancellor, was convincing evidence that Ragar was aware that the charge for MGIC insurance would be made.

Affirmed.

Byrd, J. dissents.