Leon J. GAROT *v.* Bob HOPKINS & Archie COATES

79-35                                   583 S.W. 2d 54

Opinion delivered July 2, 1979

*George E. Pike,* for appellant.

*Harold W. Madden* and *John T. Harmon,* for appellees.

FRANK HOLT, Justice. On March 10, 1977, appellees exercised a 40 day option to purchase approximately 581 acres of land from appellant. Appellees agreed to pay a total price of $232,400. A down payment of $11,620 was made, and an installment note was executed providing that appellees would pay the balance over a 10 year period at the rate of $32,852.06 annually. The written contract was silent as to a date of possession by the appellee purchasers. They instituted this action on March 6, 1978, alleging mutual mistake of material fact as to the time of possession in the execution of the sale agreement and sought rescission of the contract and refund of the $11,620 down payment. The court found mutual mistake, which justified a rescission of the agreement and a refund of appellees' down payment. Appellant first asserts that the chancellor erred in admitting oral testimony to vary the terms of the written contract.

Although parol evidence is generally not admissible to vary the terms of a written instrument, it is admissible to show mutual mistake. See *Sewell* v. *Umsted,* 169 Ark. 1102, 278 S.W. 2d 36 (1925); *Rager* v. *Jack Collier East Co.,* 257 Ark. 205, 515 S.W. 2d 205 (1974); *Kansas City & M. Ry. Co.* v. *Smithson,* 113 Ark. 305, 168 S.W. 555 (1914). Here the pleadings raised the issue of mutual mistake concerning delivery of possession and the duration of the lease encumbering the property. The court correctly held that parol evidence was admissible on the issue presented.

We must agree however with appellant's next contention

that the evidence is insufficient to support a finding of mutual mistake. It is well established that we review chancery cases *de novo* on appeal, and we do not reverse the chancellor's findings of fact unless contrary to the preponderance of the evidence. Here the property is used primarily as a hunting club. The appellees discussed with the appellant the purchase of his property with the intent of resale by them. During negotiations, they discussed the existence of a hunting club lease on the property. Appellees examined the property prior to execution of the sale contract. Admittedly, they knew there were tenants on the property during the hunting season and there was a lease encumbering the property. Even so, the appellees drafted the written sale contract and made no reference to the lease, its terms, or when appellees would get possession of the property. According to the appellees, this omission resulted from being assured by the appellant that the lease was to expire at the end of May, 1977, or 2 months following the date of the purchase contract. They asked to see the lease before the contract was signed. They were told initially that it was in the bank, where appellant was a director, and later that he could not find it. Appellant had asked them not to contact his tenants as he did not want them to know he was selling the property. Shortly after signing the contract, appellees learned that the lease was in force until 1982. A witness for appellees testified that he was in his office across the hall from appellees' office and overheard a conversation on March 10, 1977, the day the contract was signed, in which appellees told appellant that they could not purchase the property unless the lease were up at the end of May, 1977; appellant told them the lease would terminate at that time; and appellant was going to write a letter to the tenants advising them to vacate. It appears that appellees had listed the property for sale, during the option period and after the contract to purchase, in local and out-of-state publications, sent prospective purchasers resumes of the hunting club facilities and represented the hunting club lease would terminate in May, 1977.

Appellant's version is that appellees examined the property with him in January, 1977. He told appellees that the existing lease on the property was in writing. He also told them that the lease was to expire in 1982, although he

originally told them he wasn't sure when the lease expired. Even though the lease did not expire until 1982, he never promised possession, except subject to the lease. He pointed out that the purchase contract itself provides that he was not obligated to give appellees a warranty deed for the property for a period of four years. Shortly after execution of the sale contract with appellees, he gave notice to the hunting club that he was cancelling its lease due to the club's violation of certain provisions of the lease. When those notices did not prove fruitful, appellant filed suit to cancel the lease, which litigation was pending at the time of the trial of the present case.

Appellees argue that the fact that the lease did not expire until 1982 prevented them from reselling the property and that it was not until they realized that appellant could not deliver possession for a number of years that they demanded rescission of the contract and their money back. Appellant responds that the argument by appellees is essentially that the lease clouded the title to the property; their argument ignores the fact that he was not obligated to give a warranty deed to appellees for four years by the written terms of the sale agreement and, thus, the property could not be sold in fee by appellees until that time. In other words, what appellees really complain about is that a third person could not take possession of the property, and, therefore, appellees cannot sell the property at this time at a profit.

Appellees are experienced real estate men. They contracted to purchase the property knowing it was leased by a hunting club. They failed to mention the lease in the contract, drafted by them, its duration or any date as to delivery of possession of the property. They were buying the property for resale primarily as a hunting club. Under the very terms of the written contract, they were not to receive a warranty deed from appellant for 4 years. Also the contract provided for a 10 year payout period without the right of prepayment. It is true that they made written demand for a refund of their down payment in May and June, 1977. However, they waited for more than a year, or shortly before the annual payment was due, to file this action for rescission of the contract. Appellant was and is willing to give possession subject to the

lease. Appellees admitted that the omission in the contract they drafted as to a date of possession was "foolish."

In the circumstances, we hold that the finding of the court was against the preponderance of the evidence.

Reversed and remanded with directions to enter a decree not inconsistent with this opinion.

BYRD, J., dissents.