Tolbert S. BALLARD and Dorothy Edna BALLARD,
His Wife *v.* Garry CARROLL et al

CA 81-30                                          621 S.W. 2d 484

Court of Appeals of Arkansas
Opinion delivered September 9, 1981
[Rehearing denied October 7, 1981.]

*Boswell & Smith, P.A.*, by: *Robert P. Plummer*, for appellants.

*House, Holmes & Jewell, P.A.*, for appellees.

Tom Glaze, Judge. This appeal is from a degree rescinding a sale of realty between the appellants, Tolbert S. Ballard and his wife, and the appellees, Garry Carroll, et al, and granting judgment in favor of the appellees for $23,780.92. We affirm.

W. F. Rector, Jr., who handled the purchase of the property for the appellees, first met Mr. Ballard in May,

1976, when Ballard contacted Rector about selling the Ballards' property. Mr. Rector was employed at Rector-Phillips-Morse Real Estate Company. Rector tried to sell this property for about ten months but was unable to do so. Rector then organized a group of investors, including himself, and they purchased the property in May of 1977. The appellants gave the appellees a warranty deed with lien retained on the property. The appellees, in turn, paid the appellants $20,000 as a down payment and gave them a promissory note for the balance of $70,000.

Major flooding occurred in Pulaski County in September of 1978 and Rector testified at trial that the property involved here was covered by nine feet of water. Rector commenced an investigation of the water problem after the September, 1978, flood but testified he did not learn of the flooding history of the property or how often it flooded until July, 1979. Before Rector completed his investigation, the property had again flooded, and this time he said that the water was at the level of the dirt of the carport, which was the highest point on the property.

On July 6, 1979, and after Rector ended his investigation, the appellees sued appellants to rescind the sale of the real property, claiming the appellants represented that the property did not flood. The appellants denied any misrepresentation and counterclaimed for foreclosure, alleging default by the appellees on their promissory note. The court rescinded the sale, and dismissed appellants' counterclaim. Additionally, the court ordered appellants to pay $23,780.92 to appellees and imposed a lien on the subject property to secure payment.

Appellants first argue the evidence does not support the chancellor's finding that they misrepresented the property sold to appellees. The chancellor made the following findings in his decree which we find pertinent to this issue:

(3) Prior to the time of the sale, plaintiff, W. F. Rector, Jr., requested information from Tolbert Ballard about the property flooding, or if water stood on the property after rainfall. Tolbert Ballard represented

that the property did not, and would not accumulate water or flood and had adequate drainage. These representations were made to induce the sale of the property.

(4) The plaintiffs were not aware at the time of the purchase that the property had a history of flooding and relied on Tolbert Ballard's statements as to the condition of the property and purchased the property.

(5) The representations made by Tolbert Ballard to William F. Rector, Jr., as to the flooding and accumulation of water on the property were not true as Tolbert Ballard knew or reasonably should have known at the time the representations were made. Further, the evidence indicates Tolbert Ballard concealed the water problems from the plaintiffs.

(6) After the plaintiffs took possession of the property, they discovered the property was subject to periodic flooding. This flooding materially impaired the value of the property to the plaintiffs.

Chancery cases are tried *de novo* on appeal, and we do not reverse the chancellor's findings of fact unless they are clearly erroneous (clearly against the preponderance of the evidence). *Garot* v. *Hopkins*, 266 Ark. 243, 583 S.W. 2d 54 (1979), and Rule 52(a), Arkansas Rules of Civil Procedure.

In reviewing the facts in this cause, we do so in light of the law set forth in the case of *English* v. *North*, 112 Ark. 489, 166 S.W. 577 (1914), wherein the court, quoting from *Matlock* v. *Reppy*, 47 Ark. 148, 14 S.W. 546 (1886), set forth the following four tests to determine whether the rescission of contract upon the ground of fraudulent representations could be maintained:

(a) Was the fraud material to the contract; did it relate to some matter of inducement to the making of the contract?

(b) Did it work an injury?

(c) Was the relative position of the parties such, and their means of information such, that the one must necessarily be presumed to contract upon the faith reposed in the statements of the other?

(d) Did the injured party rely upon the fraudulent statements of the other, and did he have a right to rely upon them? *Matlock* v. *Reppy*, at 165.

The principles first adopted in *Matlock, supra,* were later applied in *Neely* v. *Rembert,* 71 Ark. 91, 71 S.W. 259 (1902). We believe it is instructive to briefly review the facts in *Neely.* Neely sold Rembert a 3,000 acre plantation and assured Rembert that only forty or fifty acres of the plantation contained coco grass. After the sale, Rembert discovered that coco grass covered 225 to 300 acres and patches of it were scattered over nearly all of the plantation. The Supreme Court in *Neely* affirmed the trial court's decision to rescind the sale of the plantation, stating:

A vendor who makes a false statement regarding a fact material to the sale, either with knowledge of its falsity, or in ignorance of its falsity, when from his special means of information he ought to have known it, and thereby induces his vendee to purchase, to his damage, is liable, in action at law, for the damage the purchaser sustains through the misrepresentation, or to have the sale rescinded in a suit in equity, at the option of the purchaser.

We now turn our attention to the record before us to determine if there is sufficient evidence to support the chancellor's decision to rescind the contract between appellants and appellees in accordance with the tests laid down in *Matlock.* We must review the testimony in the light most favorable to the appellee, and indulge all reasonable inferences in favor of the decree. *Arkansas State Highway Commission* v. *Oakdale Development Corporation,* 1 Ark. App. 286, 614 S.W. 2d 693 (1981).

Rector testified that when he first looked at the subject property in May, 1976, he and Mr. Ballard did not walk all its corners. Rector did, however, notice the foundation of the house was several feet high, there were nine steps leading from the ground to the house and the air conditioner set on a pedestal. Rector asked Ballard why the house was high, and Ballard said he had set (built) it that high because of the

flood in 1927. Although Rector states he did not pursue this matter further, he did ask him if the property flooded. Ballard told Rector there had been a little water on the property in 1969, but the water was on the south end, which he called the wet weather creek. Rector testified he saw no signs of flooding around the house nor did he see any standing on the land in 1976 or 1977 during the period he had the property listed for sale and before he and appellees purchased it. Since Ballard had owned the property over thirty years and stated it had not flooded, Rector said that he did not make an independent investigation of a flood problem.

Contrary to Ballard's representations to Rector, William Henson, Chief Hydraulic Engineer for the Corps of Engineers, testified there had been four actual flood situations during the last ten years. Studies conducted by the Corps showed that the subject property is completely inundated at least once every ten years. Henson stated the south part of the property floods frequently and the middle part of the property probably floods every two or three years.

Ballard testified he bought the property in 1943 and the house was built originally in 1965. Although Ballard claimed that he did not misrepresent the property to Rector, his trial testimony does confirm much of what Henson stated and what the Corp's flood studies reflected. Ballard related there were times when water had come on the land but not up to the house. On two occasions, he admitted water covered the entire property, but he could not recall the dates.

On cross examination, Ballard's responses seem to indicate he believed it was Rector's responsibility to check out the property further because Rector was a real estate agent. The following exchange took place between Ballard and appellees' counsel:

Q.   In 1976, when you hired Mr. Rector, you wanted — You listed this property at $95,000.00. Right?

A.   At first, yes.

Q. *You were aware that the property flooded at that time* and you still wanted $95,000.00 for the property. Is that correct?

A. *Why sure.* Who wouldn't?

Q. All right. *Were you aware that if Mr. Rector had sold that property, with it flooding like that, that he could possibly have gotten himself into trouble for misrepresenting it?*

A. *If I'd been Mr. Rector, I'd a went further than — If it'd been my word for that — about that land I wouldn't — He should have went further than he did. Being where — The position he's in in real estate business.*

\*  \*  \*

A. He sh — He's a real estate man and he didn't — He didn't — He didn't list that first for himself. He listed it to sell it to someone else.

Q. So, it'd have been all right if he had sold it to someone else?

A. And if it hadn't come this 1968, '78 flood he'd a still had it.

\*  \*  \*

Q. Okay. I understand what you're telling me, I think. You're saying that you probably still would have sold that land to Mr. Rector if he hadn't found out that it flooded in '78. Right?

A. No. He'd a kept the land because it was in — It wasn't all that bad. [Emphasis supplied.]

When we review Ballard's above testimony, it becomes immediately apparent that Ballard possessed, at a minimum, a "buyer beware" attitude when dealing with Rector, and we believe the chancellor could have reasonably con-

cluded that Ballard intentionally concealed the water problem from the appellees. The chancellor found Ballard told Rector the property did not and would not flood. Obviously, the trial judge believed Rector's testimony and rejected Ballard's claim that he did not misrepresent the property. It is not necessary that evidence be undisputed in order to be clear and convincing if found by the fact finder to carry a conviction to the mind. *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W. 2d 672 (1979). We cannot say that Rector's testimony was not clear and convincing when reviewed in light of all the other evidence. The chancellor was in a superior position to judge the credibility of the witnesses. The Chancellor's findings are clearly supported by the evidence and we conclude that his decision is consistent with the law set forth in the cases of *Matlock, Neely*, and *English*.

Appellants next argue that the court erred in finding that the appellees had not waived their right to rescind the sale. Appellants rely on the case of *Herrick* v. *Robinson*, 267 Ark. 576, 595 S.W. 2d 637 (1980), wherein the Arkansas Supreme Court stated:

> One who desires to rescind upon the ground of fraud or deceit must, as soon as he discovers the truth, announce his purpose at once, adhere to it, and act with reasonable diligence, so that all parties may be restored to their original position as nearly as possible; if he continues to treat the property involved in the transaction as his own or conducts himself with reference to the transaction as though it were still subsisting and binding, he will be held to have waived the objection and will be as conclusively bound by the contracts as if the fraud had not occurred.

As discussed earlier, appellees presented evidence that Rector commenced an investigation of the water problem after the September, 1978, flood but did not learn of the flooding history of the property or how often it flooded until July, 1979. Appellees brought suit against appellants on July 6, 1979. In view of this evidence, we simply see no merit in appellants' waiver argument and agree with the

chancellor's finding that appellees acted promptly to set aside the sale.

Next, appellants argue that the chancellor erred in awarding the sum of $23,780.92 to the appellees. After holding that the sale was to be rescinded, the chancellor stated that the goal of the court was to return the parties to the same position as if the sale had never occurred. The chancellor found the appellees were entitled to the sum of $37,639.27 as follows:

(1) payments toward purchase price totaling $28,178.07;

(2) costs of necessary repairs (other than 1978 flood expenses), which totaled $1,847.06;

(3) costs of restoring the property after the 1978 flood of $5,736.92;

(4) taxes paid of $892.84;

(5) insurance premiums paid of $984.38.

The chancellor also found that appellants were entitled to deduct from the above total the rental income of the property totaling $9,358.35 and the commission of $4,500 which Rector received on the sale of the property.

Appellant cites the case of *Massey* v. *Tyra*, 217 Ark. 970, 234 S.W. 2d 759 (1950), in which the Supreme Court held: "[A] purchaser may not on rescission recover for expenditures made by him on the land after he knew or in good conscience should have known that the contract of purchase would be rescinded, at least when his expenditures add nothing to the value of land, ..." We note, however, that the court in *Massey* held that the purchaser was entitled to recover his good faith expenditures, and it allowed the expenditures to be recovered even though they added nothing to the present value of the premises. Here, the chancellor found that the expenditures totaling $5,736.92 connected with the 1978 flood were in good faith. The misrepresentation by Ballard went to the very nature and

quality of the premises purchased and its fitness for the purpose for which the appellees made the purchase. Additionally, the sale agreement between the parties required the maintenance of the property, requiring the expenditure of $1,847.06, and it also required insurance to be purchased by appellees, requiring a premium payment of $984.38. We agree with the trial court that these expenses were incurred as a direct result of the misrepresentation of the flooding problem.

Finally, appellants contend that the chancellor erred in dismissing the counterclaim of the appellants as being without merit. They argue the chancellor should have ignored the material misrepresentation that induced the sale and allowed foreclosure on their counterclaim because appellees failed to maintain insurance on the property in the face amount of the indebtedness and to furnish Ballard with a copy of the insurance policy.

Appellees were obligated under the note to insure the premises against loss or damage due to fire with extended coverage in an amount at all times equal to or greater than the total balance owing on the note. Insurance was maintained by the appellees on the house the entire time the appellees owned it, and further, appellants admit receiving a copy of the replacement insurance policy after a request was made.

Appellants are correct in pointing out that appellees did change insurance companies during the time period the property was owned by appellees. However, the property was always insured. The insurance did not equal the balance due on the note, but the testimony reflects insurance was not available for more than the value of the home or $40,000. Further, the chancellor took judicial notice that an insurance company will not insure a home for more than its value.

The parties stipulated below that the house on the property was vandalized. The appellants offered testimony concerning the repairs which would be necessary to put the house in the same condition it was in at the time of the sale to

appellees. The chancellor, in his decree, ordered appellees to restore the property within a reasonable time after the property is transferred to the appellants. The chancellor provided that appellants could petition the court if appellees failed to restore the house. The record does not reflect that appellants have petitioned the chancellor regarding this issue, and we, therefore, do not disturb the chancellor's jurisdiction for any further relief on this issue.

We affirm.

Affirmed.

CLONINGER and COOPER, JJ., dissent.

CORBIN, J., not participating.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the result reached by the majority in this case. Mr. Rector listed the property in question and attempted to sell it for about ten months. Mr. Rector then organized a group of investors, including himself, and they purchased the property in May of 1977. Twenty thousand dollars was paid down and the balance of the purchase price was secured by a promissory note and vendors lien. In September of 1978, the property flooded and a substantial amount of damage was done to the house in question. After that flood Mr. Rector investigated the potential for flooding on the property and in April of 1979, the property again flooded. In July of 1979, Mr. Rector and his group of investors sued for rescission, claiming that appellants misrepresented the property by claiming that it did not flood during periods of rain. Appellants denied the misrepresentation and counter-claimed for foreclosure. The trial court rescinded the sale and dismissed the counter-claim and ordered $23,790.92 to be returned to appellees by appellants.

In order to grant a rescission of a contract for a sale of property for misrepresentation, a court must find that (a) there was a misrepresentation of a material fact, (b) the plaintiffs relied on the material fact, (c) the plaintiffs were induced thereby to make the contract, (d) the information

relied upon by the plaintiffs would not be derived by their observation and experience, and (e) the misrepresentations injured the plaintiffs. *English* v. *North*, 112 Ark. 489, 166 S.W. 577 (1914).

The trial court found that Mr. Ballard had represented that the property did not and would not flood and that those representations were made to induce the sale of the property. The court also found that appellees were not aware of the history of flooding and relied on those statements; further the court found that Mr. Ballard knew the representations were not true and that the flooding did damage appellees by reducing the value of the property.

So that we might have a perspective as to the degree to which Mr. Rector may have relied on Mr. Ballard's representations, I have included in this dissent a copy of defendants' exhibits #1 and #7. These exhibits show two views of the house with a foundation which raises it several feet off the ground. The ventilation ducts under the house are approximately six feet off the ground as is the air conditioning unit which is mounted on a pedestal. There are nine steps leading up to the front and rear doors of the residence. Further it is unquestioned that this property is located in the vicinity of Fourche Creek. Mr. Rector testified that he was aware that Ballard had owned the property over 30 years and that he relied on Mr. Ballard's representations that the property was not subject to flooding. Even if Mr. Ballard misrepresented this fact, I find it impossible to believe that a person who is a licensed real estate broker and who has had prior experience in real estate matters in Pulaski County would not be under some duty to further investigate when faced with a house constructed as this one was. I also note that Mr. Rector testified that he had discussed the matter of flooding on the south end of the property with several potential buyers and that he believed the potential flooding was a factor in their decision not to buy the property.

The majority quotes from *Herrick* v. *Robinson*, 267 Ark. 576, 595 S.W. 2d 637 (1980) which holds that a person who wishes to rescind must, as soon as he discovers the truth,

act with reasonable diligence to restore the parties to their original position. That case also indicates that if the individual continues to treat the property as his own then he may be held to have waived the objection. I think that is exactly the situation we are faced with here. Mr. Rector viewed the property some three years prior to the time suit was brought when he originally listed the property for sale. The manner in which the house is constructed was enough to put any reasonable man under considerable suspicion (if not to convince him totally) that the property was subject to flooding or, at the very least, that the person who built the house was terrified of the possibility of flooding. I then note that after Mr. Rector had purchased the property, the house did flood in September of 1978. Between September of 1978 and July of 1979, the appellees gave no notice of an intent to rescind nor did they complain of any fraud or deceit which had induced them into purchasing the property. It was only after the property had flooded again in April of 1979, that suit was finally brought. It seems obvious that appellees did not really consider the property to be subject to flooding until it had flooded a second time and they realized additional expenses were going to be necessary from time to time when the property did flood.

I would hold that there is simply no credible evidence that Mr. Ballard's misrepresentation, even if there was one, was sufficient to induce Mr. Rector to purchase the property. Further, a preponderance of the evidence does not support a finding that Mr. Rector relied on Ballard's representation in the face of the appearance of the house and its location in the city of Little Rock. Thirdly, I would reverse the Chancellor's decision because it is not possible in this case to restore the parties to the original position. Mr. Rector and his real estate firm charged a commission of $9,000.00 on the sale of this house to a group of investors headed by Mr. Rector. Mr. Rector personally retained $4,500.00 of that commission and Rector, Phillips, Morse, Inc., which was not a party to this lawsuit, received the balance. The Chancellor ordered that the $4,500.00 Mr. Rector received was to be accredited to Mr. Ballard, but no credit was allowed for the balance of the commission paid. Therefore, we have a situation where Mr. Ballard has paid $9,000.00 in commission through a broker

who was the vendee, and now since the vendee has been successful in rescinding the contract, he must still stand the loss of half the commission he paid. This is a totally inequitable result, and I disagree with it.

I would reverse and remand the case with instructions to allow appellees the alternative of bringing the payments current and continuing under their contract or granting a foreclosure on the counter-claim to appellants.

I am authorized to state that Judge Cloninger joins in this dissenting opinion.

DEFENDANTS' EXHIBIT NO. 1

DEFENDANTS' EXHIBIT NO. 7